COUNTY OF LA CROSSE, Plaintiff-Respondent,

v.

CITY OF LA CROSSE, Defendant-Appellant.

CITY OF LA CROSSE, Plaintiff-Appellant,

v.

COUNTY OF LA CROSSE, La Crosse County Board of Supervisors and Russell L. Fiedler, La Crosse County Clerk, Defendants-Respondents.

Court of Appeals

*No. 82–063. Submitted on briefs May 26, 1982.—Decided June 25, 1982.*
(Also reported in 322 N.W.2d 531.)

For the defendant-appellant and plaintiff-appellant the cause was submitted on the briefs of *Patrick J. Houlihan,* city attorney, of La Crosse.

For the plaintiff-respondent and defendants-respondents the cause was submitted on the brief of *William A. Shepherd* and *Ray A. Sundet,* corporation counsel, of La Crosse.

Brief of amicus curiae was filed by *Maureen L. Kinney* and *Johns, Flaherty & Gillette, S.C.* of La Crosse, on behalf of the *League of Women Voters.*

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J.   The City of La Crosse appeals from a circuit court judgment declaring that a county supervisory district plan adopted by the La Crosse County Board shall control the spring 1982 election for county supervisors. The court reserved jurisdiction to determine whether that plan shall be the final plan in effect for the next decade.

The city contends that the county plan is invalid because it was adopted after the statutory deadline. By the time the county board adopted the plan, the city had adopted its own municipal ward plan. We hold that the city's plan was void and that the court had the power to

grant relief in the form of adopting the county's plan, even though the county failed timely to adopt its plan.

### 1. *Statutory And Factual Background*

The equal protection clause of the fourteenth amendment to the United States Constitution guarantees the right not to have one's vote diluted by the unequal distribution of state legislative seats. *Reynolds v. Sims*, 377 U.S. 533, 565–66 (1964). The principle of population equality applies as well to county and local legislative elections, *Abate v. Mundt*, 403 U.S. 182, 185 (1971), and in Wisconsin is further guaranteed by art. I, sec. 1 of the Wisconsin Constitution. *State ex rel. Sonneborn v. Sylvester*, 26 Wis. 2d 43, 49, 57, 132 N.W.2d 249, 252, 256 (1965). For this reason redistricting is required every ten years to reflect the population shifts shown by the federal decennial census.

Pursuant to changes effected by ch. 4, Laws of 1981, a three-step process governs the reapportionment of local wards and county supervisory districts following the census. Within sixty days of receipt of the census results, each county board "shall adopt and transmit to each municipal governing body in the county a tentative county supervisory district plan." Wis. Stat. Ann. sec. 59.03 (3) (b) 1 (West 1981 pocket part).[1]

---

[1] Wisconsin Stat. Ann. sec. 59.03(3)(b) (West 1981 pocket part), which applies to counties other than Milwaukee, provides:

(b) Creation of supervisory districts.

1. Within 60 days after the population count by enumeration district or block, established in the decennial federal census of population, becomes available in printed form from the federal government or is published for distribution by an agency of this state, each board shall adopt and transmit to each municipal governing body in the county a tentative county supervisory district plan. The plan shall divide the county into districts. Each district shall be designated to be represented by one or 2 super-

The municipalities then have sixty days to divide into wards, giving consideration to the tentative plan. Wis.

visors; . . . All districts designated to be represented by one supervisor shall be substantially equal in population. All districts designated to be represented by 2 supervisors shall be substantially equal in population, which population shall be approximately twice the population of each district in the county designated to be represented by one supervisor, if any. The board shall solicit suggestions from municipalities concerning development of an appropriate plan. In the tentative plan, the board shall, whenever possible, give first preference to placing whole contiguous municipalities or parts of the same municipality within the same district and 2nd preference to placing whole contiguous enumeration districts within the same district. In the event that a division of a municipality or enumeration district is sought by the board, the board shall provide with the plan a written statement to the municipality affected by each proposed division specifying the approximate location of the territory from which a ward is sought to be created for contiguity purposes and the approximate population of the ward proposed to effectuate the division.

2. Within 60 days after every municipality in the county adjusts its wards under s. 5.15, the board shall hold a public hearing and thereafter adopt a final supervisory district plan, numbering each district. Wards within each supervisory district created by the plan shall be contiguous, except that one of more wards located within a city or village which is wholly surrounded by another city or water, or both, may be combined with one or more noncontiguous wards, or one or more wards or portions thereof consisting of island territory as defined in s. 5.15(2)(f)3 may be combined with one or more noncontiguous wards or portions thereof within the same municipality, to form a supervisory district.

Wisconsin Stat. Ann. sec. 5.15 (West 1981 pocket part), provides in relevant part:

(1)(a) Every city, village or town in this state shall by its common council or village or town board, respectively, be divided into wards . . . . The boundaries of the wards established under this section, and the number assigned to each ward, are intended to be as permanent as possible . . . . Once established, the boundaries of each ward shall remain unchanged until a further decennial federal census of population indicates that the population of a ward is then above or below the applicable population range. . . .

Stat. Ann. sec. 5.15(1)(b) (West 1981 pocket part). Each municipality must "make a good faith effort to accommodate the tentative plan submitted by the county . . . and shall divide itself into wards in such a manner that will permit the creation of county supervisory districts in accordance with the population requirements for the plan . . . ." Wis. Stat. Ann. sec. 5.15(2)(d) (West 1981 pocket part). The wards are used to form "election districts of substantially equal population." Sec. 5.02

(b) Except as authorized in sub. (2)(a), within 60 days after the receipt of a tentative supervisory district plan and written statement, if any, from the county board of each county in which a municipality is located, the governing body of the municipality shall adjust its wards according to the schedule shown in sub. (2). Except as authorized in sub. (2), each ward shall consist of whole enumeration districts or, where block statistics are available for blocks, of whole blocks. To suit the convenience of the voters residing therein each ward shall, as far as practicable, be kept compact and observe the community of interest of existing neighborhoods and other settlements. The division of a municipality into wards shall be made by the common council for each city, by the village board for each village, and by the town board for each town. In dividing the municipality into wards, the governing body shall give consideration to the tentative plan submitted by the county board of the county or counties in which it is located under s. 59.03(2)(a) or (3)(b)1 . . . .

(2) . . . .

(d) Every municipality shall make a good faith effort to accommodate the tentative plan submitted by the county or counties in which it is located under s. 59.03(2)(a) or (3)(b)1, and shall divide itself into wards in such a manner that will permit the creation of county supervisory districts in accordance with the population requirements for the plan specified in s. 59.03(2)(a) or (3)(b)1. If the use of whole enumeration districts prevents the establishment of county supervisory districts in accordance with the tentative plan, the municipality shall cooperate with the county or counties in which it is located to divide itself into wards which will permit the creation of supervisory districts in accordance with the population requirements for the plan specified in s. 59.03(2)(a) or (3)(b)1. . . .

(25), Stats. They have been described as the "basic building blocks" to be used in redrawing the boundaries of state, county and municipal election districts.[2]

In the final stage of the process, within sixty days after the municipalities adjust their wards, the county board must hold a public hearing and adopt a final supervisory district plan. Wis. Stat. Ann. sec. 59.03(3)(b)2 (West 1981 pocket part).

The trial court found that the County of La Crosse received federal census data on or about April 29, 1981. Instead of preparing one tentative county supervisory district plan, the county board approved sending the City of La Crosse five plans showing possible divisions of the city into supervisory districts. The city received the five plans the next day, June 18. August 13 the city council adopted a plan dividing the city into twenty wards. None of the five county plans called for twenty supervisory districts in the city.

August 24 the county board approved a plan calling for eighteen supervisory districts in the city and sixteen in the rest of the county. Two of the five plans submitted to the city had called for eighteen districts in the city and sixteen in the rest of the county, but the district boundaries in the August 24 plan were different from those in all earlier plans. The city received the county's last plan October 14, 1981. No public hearing was held on the plan.

The county began an action against the city November 4 asking the court to promulgate the county's August 24 plan until the city adopted a ward plan in compliance with Wis. Stat. Ann. sec. 5.15 (West 1981 pocket part). The city began an action against the county November 11 to enjoin it from adopting a supervisory district plan which did not use the city's plan and to declare that the

[2] Legislative Reference Bureau, Informational Bulletin 81–IB–2, Guidelines for Establishing Municipal Wards Following the 1980 Census of Population at 1 (March 1981).

county's August 24 plan was void. The cases were consolidated.

Although the trial court faced a new apportionment law and complicated issues, it rendered its decision December 16, 1981. It concluded that neither side had complied with the redistricting statutes. It found that the county's submission of the five plans did not constitute submission of "a" tentative plan within the meaning of the statute. The court found that the "tentative plan" was the plan approved by the county August 24. Because the city's plan was adopted before receipt of the county's tentative plan, the court held that the city's plan was void. The court ruled that it was authorized by Wis. Stat. Ann. sec. 5.18 (West 1981 pocket part), as well as under the court's inherent power, to institute an apportionment plan in order for La Crosse County to proceed with the election process.[3]

The trial court concluded it had four options as to the 1982 spring election: do nothing and let the election be held under the old supervisory district boundaries; order an at-large election for county supervisors; adopt the city's plan; or adopt the county's August 24 plan. The court rejected the first option because the existing districts were "maladjusted" to the current population, in violation of "one person, one vote" principles. It reject-

---

[3] Wisconsin Stat. Ann. sec. 5.18 (West 1981 pocket part), provides:

(1) When division into wards becomes imperative under s. 5.15 and the governing body obliged to act fails or refuses to do so, the county in which the municipality is located or any elector of the municipality may apply to the proper circuit court or its presiding judge for an order compelling division. After reasonable notice to the governing body proceeded against, the court or judge may order division when it appears necessary.

(2) Failure to comply with the order in the specified time, unless stayed or superseded, may be punished as contempt of court.

(3) Until divided, all elections are held in the established wards.

ed the second option as too great a change from the existing system of local government.

The trial court's choice between the city plan and the county plan was based in part on its finding that the county plan caused the least population variance between districts. The court lacked information to decide which plan best took into account the community of interest of existing neighborhoods and other settlements. It found, however, that no satisfactory showing had been made that the county plan did not meet the community of interest criteria.[4]

The county's failure to follow the statutory redistricting procedure did not, in the trial court's view, prevent the court from adopting the county plan. Accordingly, the trial court entered judgment adopting the county's August 24 plan for the 1982 spring election. It reserved ruling on whether the court-ordered plan should be a final plan.

We granted the city's petition to appeal pursuant to Rule 809.50(1)(c), Stats. We denied the city's motion for relief pending appeal. No 1982 election for city officials was scheduled. The city failed to show it would suffer irreparable harm if the county supervisory elections were held according to the county's August 24 plan.

The issues have not been mooted by the 1982 spring election for county officials. Our decision will affect the validity of the trial court's final judgment on its court-ordered plan and the validity of the spring election itself.

---

[4] Wisconsin Stat. Ann. sec. 5.15(1)(b) (West 1981 pocket part), n. 1, *supra*, directs municipalities to take "community of interest" factors into account in establishing local wards. Wisconsin Stat. Ann. sec. 59.03(3)(b) (West 1981 pocket part) does not impose this rule on counties, although it does direct them to put whole contiguous municipalities or parts of a municipality within the same district whenever possible.

## 2. *The County Plan*

The city contends that the time limits in Wis. Stat. Ann. secs. 5.15 and 59.03 (West 1981 pocket part) are mandatory and that the statutory purpose of orderly redistricting will be frustrated if counties and cities may delay the process. The city asserts that because the county failed to adopt "a" tentative plan within the time allowed by law, the city was compelled to adopt a ward plan with no county plan to work from. The city argues that its plan is therefore valid and that the county's is void.

We have already held that counties have an absolute duty to establish supervisory districts as directed by the legislature in Wis. Stat. Ann. sec. 59.03(3)(b) (West 1981 pocket part). *City of Janesville v. Rock County,* 107 Wis. 2d 187, 197, 319 N.W.2d 891, 896 (Ct. App. 1982). In that case, the county adopted a tentative supervisory district plan. After the municipalities had adjusted their ward boundaries to conform to the plan, Rock County attempted to adopt a different tentative plan. We affirmed a declaratory judgment requiring the county to adopt its original tentative plan as a final plan.

Submission of more than one tentative county supervisory district plan to a municipality does not comply with the plain words of Wis. Stat. Ann. sec. 59.03(3)(b)1 (West 1981 pocket part), which require the county board to "adopt and transmit to each municipal governing body in the county *a* tentative county supervisory district plan." (Emphasis added.) The county therefore failed to complete the first step in the redistricting process within the time allowed by law.

The county's August 24 plan was void in the sense that the city could not be compelled to treat it as a tentative plan merely because the county had adopted it. Rather than adopt a court-ordered plan with no assistance

from the county or the city, the trial court took a common sense approach to the problem before it. The court noted that time was of the essence, in view of the imminent spring election. The court examined the plans prepared by the county and the city to determine which was the best under the "one person, one vote" principle. The court found that the county's plan best met that principle. The court then adopted the county's plan as the court's "tentative plan," subject to a later determination as to whether it should be the final plan.

It would be absurd, under these circumstances, to preclude the trial court from considering a meritorious county redistricting plan merely because the county board had adopted it too late. The county's failure to act in a timely manner did not prevent the court from adopting that plan.

### 3. *The City Plan*

The trial court's ruling that the city's plan was void was based on Wis. Stat. Ann. sec. 5.15(1)(b) (West 1981 pocket part), which requires the municipality to adjust its wards after receipt of the county's tentative plan. The city had no tentative plan before it within the meaning of the statute when it redrew its wards.

Because the county failed to complete the first stage in the reapportionment process, the city contends that it was incumbent upon the city to perform its duty to divide into wards under Wis. Stat. Ann. sec. 5.15 (West 1981 pocket part). The city misinterprets its duty.

We held in *City of Janesville,* 107 Wis. 2d at 201, 319 N.W.2d at 898, that municipalities "like counties, have an absolute duty to perform as directed by the legislature in the three-stage process required by Wis. Stat. Ann. secs. 5.15 and 59.03 (West 1981 pocket part)." The perti-

nent statute itself compels action by a municipality as directed by the legislature. Section 5.15(1)(a) provides in relevant part, "Every city, village or town in this state shall by its common council or village or town board, respectively, be divided into wards as provided in this section . . . ."

· Division into wards as required by sec. 5.15 is impossible unless the municipality has before it a tentative plan submitted by the county board. Subsection (1)(b) provides that when dividing the municipality into wards, the governing body "shall give consideration to the tentative plan . . . ." Subsection (2)(d) requires the municipality to "make a good faith effort to accommodate the tentative plan" and to "divide itself into wards in such a manner that will permit the creation of county supervisory districts in accordance with the population requirements for the plan" specified elsewhere in the statutes.

The trial court correctly held that the city's plan was void.

### 4.  *The Court's Authority To Grant Relief*

Courts may grant relief when a legislative body fails to carry out its duty to reapportion. *State ex rel. Reynolds v. Zimmerman,* 23 Wis. 2d 606, 128 N.W.2d 16, 349, *enforcing* 22 Wis. 2d 544, 571, 126 N.W.2d 551, 566 (1964). The policy choices involved in redistricting are better made in the legislative process and should be made by the courts only when absolutely necessary. *Reynolds,* 377 U.S. at 586; *State ex rel. Reynolds,* 22 Wis. 2d at 570, 571, 126 N.W.2d at 565, 566. The necessity for judicial relief is demonstrated by the inability of the City and County of La Crosse to settle their differences in an area fundamental to constitutional representation in local government.

The trial court found authority to adopt a court-ordered plan under sec. 5.18 and under the court's inherent power. The city contends that Wis. Stat. Ann. sec. 5.18 (West 1981 pocket part), deals only with a recalcitrant municipality which refuses to adjust its wards and does not authorize the court to adopt a countywide plan. The statute is not that limited in application. Where neither the county nor the municipality have, for whatever reason, complied with the statutory reapportionment process, the court must be able to adopt a countywide plan before ordering a division into wards under sec. 5.18.

In view of our holding that the court possessed statutory power to grant relief, we need not decide whether its inherent powers authorized the same action.

### 5. The Merits Of The Two Plans

The city urges that the equal representation principle should be disregarded because raised for the first time on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443, 287 N.W. 2d 140, 145 (1980). The city then discusses the relative merits of its own plan. It contends that its plan would not create an impermissible variance in the size of the districts and that it took into account other criteria, such as lines of political subdivisions.

The city incorrectly asserts that the county and amicus raise the equal representation issue for the first time on appeal. When choosing between the four possible courses of action the court considered available to it, the court said it must consider the "one person, one vote" principle. The court decided that the county plan was the best because it had the lowest population variance and had not been shown to violate the other relevant considerations.

The city has not argued on appeal that the trial court's factual findings are against the great weight and clear preponderance of the evidence, the standard of appellate review of such findings. *Cogswell v. Robertshaw Con-*

*trols Co.*, 87 Wis. 2d 243, 249, 274 N.W.2d 647, 650 (1979). Because we need not decide issues not specifically argued, *State v. Beno*, 99 Wis. 2d 77, 91, 298 N.W.2d 405, 413 (Ct. App. 1980), we do not deal with the individual or relative merits of the county's plan and the city's plan.

We conclude that the county was derelict in its duty to adopt a tentative supervisory district plan in the first sixty days after receiving the census data. We hold, however, that the county's inaction did not entitle the city to make its own plan and to compel county compliance with it. The trial court's holding that the city plan was a nullity is affirmed. We affirm that the court had authority to adopt the county plan for the spring 1982 supervisory elections.

The trial court has reserved ruling on the question whether its court-ordered plan should be a final plan. That issue is not before us on appeal.

*By the Court.*—Judgment affirmed.