William T. RILEY, and Susan K. Riley, Plaintiffs-
Appellants,

v.

TOWN OF HAMILTON and County of La Crosse,
Defendants-Respondents.

Court of Appeals

*No. 89–0155. Submitted on briefs October 12, 1989.—Decided
December 7, 1989.*

(Also reported in 451 N.W.2d 454.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Peter T. Waltz* and *Thomas M. Fitzpatrick* of *Fitzpatrick, Smyth, Dunn & Fitzpatrick* of La Crosse.

For the defendant-respondent La Crosse County the cause was submitted on the brief of *William A. Shepherd* of *Corporation Counsel* of La Crosse.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. William and Susan Riley appeal from a judgment dismissing their inverse condemnation action against the Town of Hamilton and La Crosse County (collectively "the county").

Section 32.10, Stats., allows "the owner" of property occupied, but not condemned, by one possessing the power of condemnation, to commence inverse condemnation proceedings seeking damages for the taking. We are asked on this appeal to decide whether the Rileys, who owned the property at the time the damage was sustained, but who were not the record owners at the time the action was commenced, may maintain the suit. We conclude that ownership of the property at the time the action is commenced is not required, and that the trial court erred in dismissing Riley's complaint. We therefore reverse the judgment.

In 1978, the Rileys purchased several acres of farmland in the Town of Hamilton. Later that year, the county began a road construction project adjacent to the property, and Riley gave the county permission to store machinery and some black dirt on the property.

Several years later (in 1986), a percolation test conducted in connection with the Rileys' contemplated sale of the property revealed that there was a quantity of asphalt-type material buried underneath the topsoil in the area adjacent to the road construction project. Sometime thereafter, the Rileys sold the property to a third party for $10,700. Prior to the sale the property had been assessed at $17,700, and they brought this action to recover the difference in value.

The trial court, interpreting sec. 32.10, Stats., as requiring ownership of the property at the time of commencement of the action, granted the county's motion for summary judgment dismissing the action.

██ Summary judgment "methodology" is well known and often applied by the courts, and we need not detail it here. *See Grams v. Boss,* 97 Wis. 2d 332, 338–39, 294 N.W.2d 473, 476–77 (1980). In brief, summary judgment proceedings allow the parties to avoid a trial where no material facts are in dispute and only a question of law is at issue. *Bulgrin v. Madison Gas & Electric Co.,* 125 Wis. 2d 405, 407–08, 373 N.W.2d 47, 49 (Ct. App. 1985). That is the case here. Only the interpretation and application of sec. 32.10, Stats., is in dispute and that is a legal question—one we decide independently, without deference to the trial court's decision. *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

 The question is a novel one and does not appear to have been directly addressed by either the supreme court or this court. There is, however, authority in the form of text references and cases from other jurisdictions which we believe state the appropriate rule. Professor Nichols, for example, explains that:

> It is well settled that when there is a taking of property by eminent domain . . . it is the owner of the property *at the time of the taking* who is entitled to compensation. Consequently, if the parcel of land from which the taking is made changes hands after the taking has occurred but before the compensation has been paid, the right to receive the compensation does not run with the land, but remains a personal claim of the person who was the owner at the time of the taking . . ..

2 J. Sackman, *Nichols' The Law of Eminent Domain* sec. 5.01[4] at 5–29–5–30 (rev. 3rd ed. 1989) [emphasis in

original; footnotes omitted]. The Minnesota Supreme Court has adopted a similar rationale, stating that:

> [A] right to compensation vests in the person owning the property at the time of [the taking] . . .. When the original owner conveys what remains of the realty, he [or she] does not transfer the right to compensation for the portion he [or she] has lost without a separate assignment of such right. If the rule were otherwise, the original owner of damaged property would suffer a loss and the purchaser of that property would receive a windfall.

*Brooks Inv. Co. v. City of Bloomington*, 232 N.W.2d 911, 918 (Minn. 1975). We consider these principles to be sound, and we adopt them.[1]

The county also argues that the Rileys "failed to file timely notice of their claims under sec. 893.80(1)(a), Stats., and therefore failed to preserve their right to sue . . .." The statute conditions the right to sue a political corporation for its official acts upon the filing of written notice of the "circumstances of the claim" within 120 days after "the happening of the event" giving rise to it.

The county, without citing any authority for the proposition, maintains that "the happening of the

---

[1]In so holding, we join several other courts that have concluded that the "owner" entitled to sue for inverse condemnation is the owner at the time of the taking, not the owner at the time the action is commenced. *See Milens of California v. Richmond Develop. Agency,* 665 F.2d 906, 909 (9th Cir. 1982); *Murray v. U.S.,* 817 F.2d 1580, 1583 (Fed. Cir. 1987), *aff'd,* 864 F.2d 148 (Fed. Cir. 1988), *cert. denied,* — U.S. — (1989); *Lacey v. United States,* 595 F.2d 614, 619 (Ct. Cl. 1979); *Canney v. City of St. Petersburg,* 466 So. 2d 1193, 1195 (Fla. Dis. Ct. App. 1985); *State, Through Dept. of Highways v. Luling Indus.,* 443 So. 2d 672, 674–75 (La. Ct. App. 1983), *cert. dismissed,* 468 U.S. 1220 (1984); *Riddock v. City of Helena,* 687 P.2d 1386, 1388 (Mont. 1984).

event" giving rise to the claim in this case was the initial deposit of the asphalt material on the Rileys' land and asserts that the trial court erred when, after ruling in the county's favor on the "ownership" issue, it remarked:

> I too think that the date of discovery is more than likely the triggering time for the filing of the notice of claim as opposed to the time that the occupation or taking itself took place, because . . . that is the more sane interpretation of the statute. It protects a right which an individual has; it does not require an individual to file a claim prior to the action arising . . ..

The Rileys contend that this argument was waived when the county failed to cross-appeal the issue, citing a statement to that effect in *Washington v. Hicks,* 109 Wis. 2d 10, 13, 325 N.W.2d 68, 70 (Ct. App. 1982). In *State v. Huff,* 123 Wis. 2d 397, 407–08, 367 N.W.2d 226, 231 (Ct. App. 1985), however, we held that a respondent may raise an issue in his or her brief without filing a cross-appeal when all that is sought is the raising of an error which, if corrected, would sustain the judgment. We believe that rule is applicable here.

But the county's argument is undeveloped. Its brief does not inform us why the date of the deposit, rather than some later date—such as the date on which the percolation test results were obtained, or when the Rileys became aware of the buried asphalt, or the date of the sale of the property for a price lower than its assessed value—should constitute the "happening of the event" under sec. 893.80(1)(a), Stats. In addition, we note that the statute provides an exception to the notice requirement where the municipality had actual notice of the claim and was not prejudiced by the delay or lack of the required notice. The briefs are also silent on these points.

In short, the county has done no more than to state the proposition without any elaboration. It has not developed or presented an argument telling us why we should accept its conclusory proposition, and it has not referred us to any legal authority supporting the statement.

It is an old and "well-established rule" of Wisconsin appellate practice that "questions not argued will not be considered or decided." *Public S.E. Union v. Wisconsin E.R. Board,* 246 Wis. 190, 199, 16 N.W.2d 823, 827 (1944). We have often held that we will not consider propositions which are not specifically argued and are unsupported by citations to legal authority. *County of La Crosse v. City of La Crosse,* 108 Wis. 2d 560, 572, 322 N.W.2d 531, 536 (Ct. App. 1982); *Charolais Breeding Ranches v. FPC Securities,* 90 Wis. 2d 97, 108–09, 279 N.W.2d 493, 499 (Ct. App. 1979).

*By the Court.*—Judgment reversed.