STATE of Wisconsin, Plaintiff-Respondent,

v.

Everett W. MOSHER, Defendant-Appellant.†

Court of Appeals

No. 97–3535–CR. *Submitted on briefs July 2, 1998.—Decided July 30, 1998.*

(Also reported in 584 N.W.2d 553.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tim Provis* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Eich, C.J., Vergeront and Deininger, JJ.

VERGERONT, J.   The issue on this appeal is whether Everett W. Mosher was subject to custodial questioning by police when he made statements admitting sexual contact with a person under sixteen. The trial court ruled he was not and, therefore, was not entitled to the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and the statements were admissible. After this ruling, Mosher entered no contest pleas to two charges of violating § 948.02(2), STATS., sexual contact with a person under sixteen.

Mosher appeals the judgment of conviction entered on those two charges and the trial court's order denying his motion to suppress his statements. He contends that, considering all the circumstances, and in particular the fact that the police officer intentionally withheld information from him, he was in custody for *Miranda* purposes. We agree with the trial court that information not communicated to Mosher is irrelevant to the inquiry, and that Mosher was not in custody when he made incriminating statements. We therefore affirm.

## BACKGROUND

Detective Linda Kohlmeyer of the Dane County Sheriff's Department testified as follows at the hearing on Mosher's motion to suppress his statements. She was investigating a sexual assault that occurred on November 14, 1996. The victim told Kohlmeyer that she worked with Mosher at a restaurant in Sauk City, and Kohlmeyer went to the restaurant on November 18, 1996, to speak to Mosher. Kohlmeyer was in plain clothes. She identified herself to Mosher verbally and with her badge and department I.D. as a detective with the Dane County Sheriff's Office. She told Mosher that she wanted to speak to him in reference to an investigation she was conducting and asked him if he would come with her voluntarily to the police department so they could talk about the investigation. Kohlmeyer told Mosher that he was not under arrest. She did not display a gun or handcuffs to him. Mosher said he would come, that he had to go and get his coat, and he went to another area of the restaurant to get some things.

Kohlmeyer drove Mosher to the Sauk Prairie Police Department in her unmarked squad car. She got in the car first and unlocked the passenger's door; then

he got in. The doors remained unlocked during the drive. At the police station, they each opened their respective doors at the same time and got out of the car. Inside the police station, Kohlmeyer requested an interview room, and she and Mosher went into the room. They arrived at the police station at 3:20 p.m. and the interview ended at 5:35 p.m. No one was present in the room during the interview besides Kohlmeyer and Mosher.

During the interview, Mosher did not appear to Kohlmeyer to be under the influence of drugs or alcohol, did not indicate that he was in any pain or discomfort, and he did not say he needed food or something to drink. He asked to go to the restroom about 4:10 p.m., and again sometime later. When Mosher went to the restroom, Kohlmeyer waited at the counter in the police department while Mosher walked down a hallway through an open public area to the restrooms on the other side of the building. He passed a door going out of the building on his way to and from the restroom. He could not have left the building by those doors without Kohlmeyer seeing him leave. Kohlmeyer did not know if there was another exit from the building. There was another police officer in the area with Kohlmeyer when Mosher went to the restroom. Mosher took one cigarette break between the two restroom breaks, and Kohlmeyer accompanied him outside on this break.

During the interview, Kohlmeyer talked to Mosher about the sexual assault of M.M. on November 14, 1996, and he admitted to sexual contact and sexual penetration. Kohlmeyer did not give Mosher *Miranda* warnings.

Before going to speak to Mosher on November 18, 1996, Kohlmeyer ran his name through the NCICB computer and learned that there was an outstanding

warrant for his arrest for failure to pay child support. She did not tell Mosher about this warrant before or during the interview. At the end of the interview, Kohlmeyer told Mosher that she was taking him into custody based on the interview for four counts of second-degree sexual assault of a child. She also told him that she had an outstanding warrant for his arrest for nonsupport. She believed he was unaware of the warrant until she told him, and that he could not have seen the order for his arrest, which was in a portfolio on the desk during the interview. Kohlmeyer did not ask Mosher any substantive questions about the sexual assault after she placed him under arrest.

Kohlmeyer testified that she did not give Mosher *Miranda* warnings before the interview because she believed that he was making a voluntary statement to her. In her mind, he was not free to leave because she knew about the warrant, but she did not communicate that to him and did not believe that her conduct or gestures indicated that he was not free to leave. Kohlmeyer acknowledged that she did everything she could to give Mosher the impression that he was not in custody and was free to leave if he chose to, even though she knew at some point she was going to take him into custody because of the non-support warrant.

Mosher also testified at the hearing. He agreed that he went willingly to the police station with Kohlmeyer. However, he testified that during the interview when she opened a black portfolio on the desk, he saw a document stating "warrant for arrest" with his name on it. When he saw the warrant, he felt that he could not get up and leave. This occurred within the first ten minutes of being in the room. The room was locked. He did not understand that he had the right to remain silent, and, if he had understood that, he would not

208

have made any statements to Kohlmeyer. When he went to the restroom the first time, he knew he could not leave because Kohlmeyer and one or two officers were around the counter. He felt he could not leave while he was on a cigarette break because she was standing within an arm's reach. He did not try to leave during the interview because if the police did not want him to leave, Mosher explained, "they're going to take me down and I did not want that to happen." He made the statements about the sexual contact to Kohlmeyer because he is an honest person and did not have a reason to lie; he did not think he committed any crime.

In response to the court's questions, Mosher testified that he did not know what Kohlmeyer was investigating when he agreed to go with her to the police department, but he went because he had nothing to hide. Mosher also testified that after he saw the warrant on Kohlmeyer's desk, he did not ask her what it was for, although he did not know why she had it. He never asked her if he was free to leave. He described the warrant. His description, however, was inconsistent with the appearance of the order for arrest, which Kohlmeyer produced on rebuttal. This was the document, Kohlmeyer testified, that was in her portfolio during the interview and which she showed Mosher when she placed him under arrest.

The trial court denied the motion to suppress. The court found that Mosher did not see a warrant for his arrest during the interview, explaining the discrepancies between what Mosher testified he saw and the actual appearance of the document. The court concluded, considering the totality of the circumstances, Mosher's statements were voluntary. The court found Mosher voluntarily accompanied Kohlmeyer to the police station because he believed he had nothing to

hide and believed in telling the truth. The court found Mosher never asked if he was free to leave, or what Kohlmeyer was investigating or why she brought him there, and never stopped answering Kohlmeyer's open-ended questions. The court found there was no police pressure, no threats, and no psychological coercion other than what "the defendant may have placed upon himself." The court concluded Kohlmeyer's plan to arrest Mosher based on the warrant was irrelevant to the analysis because it was not communicated to Mosher. Ultimately, the court concluded Mosher was not in custody for *Miranda* purposes when he made the inculpatory statements and therefore *Miranda* warnings were unnecessary before he was placed under arrest. *Miranda* warnings were also unnecessary after he was arrested, the court stated, because there was no more questioning.

## DISCUSSION

On appeal, Mosher contends *Miranda* warnings were required because he was in custody when Kohlmeyer interviewed him. Mosher emphasizes Kohlmeyer's deception—she knew at some point she was going to take him into custody because of the non-support warrant, but she intentionally did not disclose this to him—as a critical factor favoring a conclusion that he was in custody.

An officer's obligation to administer *Miranda* warnings to an individual attaches only where there has been a restriction on the individual's freedom so as to render him or her "in custody." *Stansbury v. California*, 511 U.S. 318, 322 (1994). In determining whether an individual was in custody for purposes of *Miranda*, the court must consider the totality of

the circumstances. *State v. Gruen*, 218 Wis. 2d 581, 593, 582 N.W.2d 728, 732 (Ct. App. 1998). "The test is 'whether a reasonable person in the [suspect's] position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances.' " *Id.* (quoting *State v. Swanson*, 164 Wis. 2d 437, 446–47, 475 N.W.2d 148, 152 (1991)). This determination depends on the objective circumstances, "not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323.

We have recently held that the factors relevant in determining whether a suspect initially detained for a traffic stop is "in custody" for *Miranda* purposes include: the suspect's freedom to leave, the purpose, place and length of the interrogation and the degree of restraint. *Gruen*, 218 Wis. 2d at 594, 582 N.W.2d at 733. When considering the degree of restraint, courts consider whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the defendant was restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved. *Id.* at 594–95, 582 N.W.2d at 733.

In reviewing a trial court's determination on a motion to suppress evidence, we accept the trial court's finding of historical fact unless they are clearly erroneous. *See State v. Turner*, 136 Wis. 2d 333, 343–44, 401 N.W.2d 827, 832 (1987). However, whether a person is in custody for *Miranda* purposes is a question of law, which we review de novo. *State v. Buck*, 210 Wis. 2d 115, 124, 565 N.W.2d 168, 171 (Ct. App. 1997). Based on the facts as found by the trial court and on the

undisputed facts, we conclude that Mosher was not in custody at the time he made the inculpatory statements.

The trial court found that Mosher went voluntarily to the station with Kohlmeyer to answer questions, because he felt he had nothing to hide. It found Mosher did not see the order for his arrest for nonsupport until Kohlmeyer showed it to him after he made the statements and she placed him under arrest. It also found that the police did not threaten or psychologically coerce him. These findings are not clearly erroneous.

It is undisputed that Kohlmeyer did not tell Mosher he was under arrest until after he made the statements, and did not mention the non-support warrant to him until she told him he was under arrest. Kohlmeyer was the only officer questioning Mosher. She did not place him in physical restraints before or during the interview and she did not display any weapons. The police car was unlocked and Mosher got out on his own at the police station. He went to the restroom on his own twice.

██

Although Mosher testified that the room in which he was interviewed was locked, the court did not make a finding on this point.[1] When a trial court does not make a formal finding of fact, we may assume it was determined in the way that supports the court's decision. *See Gruen*, 218 Wis. 2d at 597, 582 N.W.2d at 734. A finding that the door to the interview room was locked would be inconsistent with the court's other findings, comments and decision. *See id.* Also, the court

---

[1] Kohlmeyer was never asked whether the room was locked or unlocked. However, her testimony that she did everything she could to make Mosher feel free to leave if he chose is inconsistent with locking Mosher in the interview room.

resolved other credibility issues against Mosher. We will therefore assume that the trial court implicitly found that the door to the interview room was unlocked.

In the context of all these circumstances, we do not view the fact that Kohlmeyer accompanied Mosher outside on a cigarette break between the two restroom breaks to weigh significantly in favor of custody. Kohlmeyer explained that on a later cigarette break after she had placed Mosher under arrest, she also accompanied him but stayed closer to him than she had on the first cigarette break because he was then in custody, and she stayed between him and a route she believed he could have used to escape. She made this effort to block an escape route only on the second cigarette break, after she placed him under arrest. This testimony was undisputed by Mosher. Being accompanied outside by the questioning officer on the first cigarette break, in the context of all the other circumstances, would not lead a reasonable person to believe he was not free to break off the questioning and leave. *See State v. Koput,* 142 Wis. 2d 370, 381, 418 N.W.2d 804, 808 (1988) (while officers accompanied suspect to washroom during interview, this was not "custodial" escort but was for purpose of guiding him to destination).

Mosher's primary challenge to the trial court's ruling is that Kohlmeyer's knowledge of the non-support warrant which she intentionally kept from Mosher during the interview is a "coercive" factor that made Mosher's situation custodial. He emphasizes Kohlmeyer's testimony that, in her mind, Mosher was not free to leave because of the warrant. Mosher relies for authority on one of the factors—"deceptive statements employed during questioning"—that the court in

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990), identified as indicia of custody. The court stated:

> A consistent line of inquiry has developed from this case-by-case approach which has identified several common indicia of custody. These indicia of custody relate to the specific police practices employed during questioning which tend to either mitigate or aggravate an atmosphere of custodial interrogation. This inquiry into the indicia of custody has generally focused on an examination of (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.[2] [Footnote added.]

*Id.*

We disagree that *Griffin* supports Mosher's position. The *Griffin* court's comments on the fourth factor make clear that the "deceptive stratagems" it refers to are those that have the effect of pressuring the suspect

---

[2] The court then explained that this list is representative, not exhaustive, and that the first three factors mitigate against custody while the second three are coercive factors and aggravate the existence of custody. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

to confess.[3] A technique or strategy can have this effect only if something is communicated verbally or otherwise to the suspect. Thus, an example the court used is "confront[ing the] suspect with false or misleading witness statements." *Griffin*, 922 F.2d at 1351. Kohlmeyer may have been deceptive in not telling Mosher that there was a warrant for his arrest for nonsupport and that he was not free to leave because of that warrant, but she did not communicate this information to him until the end of the interview.

The United States Supreme Court has firmly rejected the argument that an officer's views or beliefs that are not manifested to the suspect are relevant in determining whether the suspect is in custody for

---

[3] The *Griffin* court stated:

Police deployment of strong arm tactics or deceptive strata-
gems during interrogation, number four in the list of indicia of
custody enumerated above, is a practice widely condemned in
American law. The litany of pressure- tactics available to law
enforcement, and their proven effectiveness in extracting confes-
sions, are vividly described in the *Miranda* opinion and were the
impetus for the *Miranda* decision itself. *Miranda*, 384 U.S. at 466,
86 S. Ct. at 1624. Because such strong arm tactics are more gener-
ally associated with formal arrest than with an informal encounter
with police, the use of such tactics is identified as an indicium of
custody. *Beraun-Panez*, 812 F.2d at 580 (custodial interrogation
where officers confronted suspect with false or misleading witness
statements, employed "Mutt and Jeff" routine, and took advantage
of suspect's insecurities about his alien status). It goes without
saying that a strong presumption of impropriety attaches to any
circumstances where this Court detects the use of coercive interro-
gation techniques to obtain confessions. *Carter*, 844 F.2d at 371 (no
good faith exception to "inadvertent" use of coercive interrogation
tactics because inquiry concerns the effect of the interrogation
techniques on the suspect).

*Griffin*, 922 F.2d at 1351.

The *Griffin* court did not find this fourth factor present in the case before it. *See id.* at 1354.

*Miranda* purposes. In *Berkemer v. McCarty*, 468 U.S. 420 (1984), the Court concluded that a motorist was not in custody for *Miranda* purposes even though the traffic officer "apparently decided as soon as [the motorist] stepped out of his car that [the motorist] would be taken into custody and charged with a traffic offense." *Berkemer*, 468 U.S. at 421. The Court's reasoning was that the officer "never communicated his intention" to the motorist during the relevant questioning. *Id*. The lack of communication was crucial, the court held, because under *Miranda*, a "policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id*.

In *Stansbury*, the court reviewed and affirmed its ruling in *Berkemer* and in a number of other cases in which it held that a police officer's subjective view, if undisclosed, does not bear on the question whether an individual is in custody. *See Stansbury*, 511 U.S. at 324. It stated: "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned." *Id*. After explaining how an officer's degree of suspicion about a suspect, when communicated to the suspect, may bear on the custody issue, the court concluded:

> In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, *but only if the officer's views or beliefs were somehow manifested to the individual under interrogation* and would have affected how a reasonable person in

that position would perceive his or her freedom to leave.

*Id.* at 325 (emphasis added).

■

Both the Wisconsin Supreme Court and this court have followed *Berkemer's* analysis for determining whether a person is "in custody" for *Miranda* purposes, specifically applying the principle that an officer's opinion on whether a suspect is free to leave, if not communicated to the suspect, is not relevant. In *Koput*, the court decided that the officers' testimony that in their view Koput was free to leave was irrelevant and observed:

> Older cases which rely upon *Orozco v. Texas*, 394 U.S. 324 (1969), do not reflect present law. In *Orozco*, the Supreme Court held that a suspect was in custody because one of the officers had the subjective intention of not letting the suspect go.

*Koput*, 142 Wis. 2d at 380 n.8, 418 N.W.2d at 808. In *State v. Leprich*, 160 Wis. 2d 472, 479, 465 N.W.2d 844, 846–47 (Ct. App. 1991), we held that an officer's testimony that, if the suspect had asked to leave, the officer would have asked her to stay was not relevant to the "in custody" determination. And in *Village of Menomonee Falls v. Kunz*, 126 Wis. 2d 143, 150, 376 N.W.2d 359, 363 (Ct. App. 1985), we held that the officer's "unarticulated opinion that he did not consider [the suspect] free to leave" had no bearing on the issue of custody.

The reasoning of all the decisions that hold an officer's plan or opinion irrelevant unless communicated in some way to the suspect flows directly from the purpose of the *Miranda* warnings, which is to protect a suspect from coercive pressures exerted upon him or

217

her during police questioning that might compel self-incrimination. *See Miranda*, 384 U.S. at 439. Information, plans and opinions of which a suspect is unaware cannot, by definition, exert pressure on that suspect.[4]

Mosher attempts to distinguish *Berkemer* and *Stansbury* by arguing that Kohlmeyer's possession of the warrant and her duty to execute it are "objective facts," not "subjective intentions," and that Kohlmeyer's acknowledgment that she deliberately withheld this information from Mosher is an "objective circumstance." Mosher is apparently equating information about his legal situation with the objective circumstances that must be taken into account in determining whether a person is in custody, but is omitting entirely from his analysis recognition that the "objective circumstances" that must be considered are only those known to the suspect. The two cases he relies on for this argument readily reveal the deficiency in his argument. In *State v. Kelekolio*, 849 P.2d 58, 71–74 (Haw. 1993), the court held that, whereas intentionally false statements made to suspects about the facts of the alleged offense are part of the circumstances to take into account in deciding whether they are in custody, certain types of false statements made to suspects about matters that are "extrinsic" to the facts of the crime (such as misrepresentation of legal principles) are per se coercive. In *Lynch v. State*, 632 N.E.2d 341, 343–44 (Ind. 1994), the court held that an officer's misleading statements to the suspect about the meaning and consequences of "waiver" required

---

[4] Mosher does not contend on appeal that Kohlmeyer's knowledge about the warrant and view that Mosher was not free to leave was conveyed in any way to him, and the trial court's findings, which are supported by the record, foreclose this argument on appeal.

suppression of the suspect's statements. These cases do not support an affirmative obligation on the part of the officer to disclose information to a suspect about his or her legal situation.

In summary, we conclude that the trial court correctly decided that Mosher was not in custody at the time he made the incriminating statements and therefore *Miranda* warnings were not required. Kohlmeyer's knowledge about the warrant for nonsupport and her decision not to tell Mosher about this until the end of the interview, even though she intended to arrest him on that warrant at some point, are irrelevant to the inquiry of whether Mosher was in custody when he made the statements, because that information was not communicated to Mosher until after he made the statements.

*By the Court.*—Judgment affirmed.