STATE of Wisconsin, Plaintiff-Appellant,

v.

Susan M. GOETZ, Defendant-Respondent.

Court of Appeals

*No. 01–0954–CR. Submitted on briefs October 29, 2001.—
Decided November 27, 2001.*

2001 WI App 294

(Also reported in 638 N.W.2d 386.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Nila Jean Robinson* of *Robinson, Peterson, Berk & Cross*, Appleton.

Before, Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.    The State appeals an order suppressing statements made by Susan Goetz during the execution of a search warrant. The State argues that law enforcement did not have to give Goetz her *Miranda*[1] warnings because she was not in custody when she gave her statements. We agree and reverse the order.

## BACKGROUND

¶ 2.    On January 6, 2000, Oconto County sheriff's deputies executed a search warrant at Goetz's residence. The warrant authorized a search for evidence related to cultivating and processing marijuana.

¶ 3.    Goetz was present when the warrant was executed. Upon entering the premises, deputy Dale Janus informed Goetz that they had a search warrant. He told Goetz that he wanted to talk with her, but that she was not under arrest. He also stated that he did not intend to arrest her unless she obstructed the search. Goetz understood.

¶ 4.    Goetz was told to sit at the kitchen table, where Janus asked Goetz several questions. Goetz first said she had no knowledge of any marijuana on the

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

premises. She then stated the deputies might find a small amount of marijuana and drug paraphernalia in the bedroom.

¶ 5.   Janus accompanied Goetz to the bedroom to retrieve the marijuana and paraphernalia. Janus and Goetz then came back downstairs and Janus told Goetz to sit on a couch. Janus asked Goetz if she would sign a written statement. Goetz responded that she "didn't feel [she] should give him a statement without an attorney. . . ." Another deputy then placed Goetz in handcuffs. The handcuffs were removed about an hour later when Goetz's children came home from school. Goetz was asked no further questions. At no time did the deputies read Goetz her *Miranda* rights.

¶ 6.   During the search, the officers found approximately one pound of marijuana, scales, pipes, large amounts of currency, a firearm, and other items associated with controlled substances. Upon completing the search, the deputies left the premises. Goetz was not arrested. She was later charged with: (1) possession of a controlled substance with intent to deliver, contrary to Wis. Stat. § 961.41(1m), and (2) keeping a drug house, contrary to Wis. Stat. § 961.42(1).

¶ 7.   Goetz moved to suppress the statements she made to deputy Janus on the grounds that she was not read her *Miranda* rights. The court granted the motion, concluding that Goetz was in custody at the time she gave her statements. The State then appealed.

## STANDARD OF REVIEW

¶ 8.   Whether a person is in custody for *Miranda* purposes is a question of law this court reviews independently. *State v. Mosher*, 221 Wis. 2d 203, 211, 584

N.W.2d 553 (Ct. App. 1998). We review with deference the circuit court's factual findings. *Id.* at 211–12. However, we independently determine whether, under the facts, Goetz was in custody at the time she made her statements. *See id.*

## DISCUSSION

¶ 9. The circuit court suppressed Goetz's statements because she was placed in handcuffs. After pointing out that a deputy other than Janus had handcuffed Goetz, the court stated that it was "finding . . . a custodial situation – not necessarily by what this officer, Mr. Janus, did, but what the other officer did when he put her in cuffs." Had the other deputy not placed handcuffs on Goetz, the court stated, "it would have been an entirely different outcome. . . ."

¶ 10. In order to protect a citizen's right against self-incrimination guaranteed by the Fifth Amendment, the United States Supreme Court held in *Miranda* that suspects must be read certain warnings before they are questioned. *Miranda*, 384 U.S. at 444. However, a suspect must be in custody in order to trigger the *Miranda* requirements. *Id.*

¶ 11. A person is in custody for purposes of *Miranda* if the person is either formally arrested or has suffered a restraint on freedom of movement of the degree associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). The test for custody is an objective one. *See State v. Pounds*, 176 Wis. 2d 315, 321, 500 N.W.2d 373 (Ct. App. 1993). Courts ask whether a reasonable person in the suspect's position would have considered himself or herself to be in custody. *Id.*

384

¶ 12.   In *Michigan v. Summers*, 452 U.S. 692, 698 (1981), the Supreme Court held that detentions during the execution of a search warrant implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted. These types of detentions are " 'substantially less intrusive' than an arrest." *Id.* at 702 (citation omitted). In other words, a suspect who is detained during the execution of a search warrant has not suffered a " 'restraint on freedom of movement' of the degree associated with a formal arrest[,]" and is thus not in custody for purposes of *Miranda. Beheler*, 463 U.S. at 1125 (citation omitted). Detention in a person's home "could add only minimally to the public stigma associated with the search itself and would involve neither the inconvenience nor the indignity associated with a compelled visit to the police station." *Id.* at 702.

¶ 13.   Setting aside for the moment the fact of the handcuffing, the record shows that Goetz was detained before and during the questioning, but she was not in custody.[2] After the deputies came into the house to execute the search warrant, Janus told Goetz to sit at the kitchen table. He also told Goetz that she was not under arrest and was not going to be placed under arrest unless she interfered with the search. Goetz confirmed that she understood this. Janus asked if there were any drugs on the premises. Goetz stated that

---

[2] The circuit court's findings of facts are minimal. However, the court's findings may be implicit in its decision. *Schneller v. St. Mary's Hosp. Med. Ctr.*, 162 Wis. 2d 296, 311, 470 N.W.2d 873 (1991). The court found that a custodial situation existed because Goetz was placed in handcuffs. However, absent the handcuffs, the court indicated that Goetz was not in custody for *Miranda* purposes.

there was some marijuana and drug paraphernalia up in the bedroom. Janus then asked her to go get it and he accompanied her. Once they retrieved the marijuana and paraphernalia, Janus told Goetz to sit on a couch in the living room. This was not a situation where a reasonable person would have considered her freedom of movement to be restrained to the degree associated with a formal arrest.

¶ 14. In fact, the circuit court agreed. As it stated, if the other deputy had not handcuffed Goetz after the questioning, "it would have been an entirely different outcome. . . ." The question then is what effect hand-cuffing after questioning has on what a reasonable person would have thought during the questioning. The answer is that it can have no effect.

¶ 15. Handcuffing cannot operate retroactively to create custody for purposes of *Miranda* because a reasonable person's perception at the time of question-ing cannot be affected by later police activity. "[I]t is a matter of logic unsound to say that what happens later has some bearing on how a reasonable person, would have predicted the situation at some earlier time." 2 WAYNE R. LaFAVE, ET AL., CRIMINAL PROCEDURE, § 6.6(c) (2d ed. 1999).

¶ 16. Thus, Goetz was not in custody at the time of questioning simply because she was later handcuffed. A reasonable person's perception, in Goetz's position, could not be influenced by events that have not yet occurred.[3]

---

[3] Because it is unnecessary for our opinion, we do not address whether Goetz was in custody after she was handcuffed. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938).

¶ 17. Goetz was being lawfully detained while the warrant was being executed. The record does not suggest that, either before or during the questioning, Goetz's freedom of movement was restrained to a degree associated with a formal arrest. Only later, after she had given her statements, was she handcuffed. Based on *Summers*, we conclude that Goetz was not in custody at the time she gave her statements.

¶ 18. The dissent apparently concedes that under federal law Goetz was not in custody for *Miranda* purposes. However, the dissent urges that we utilize the Wisconsin Constitution to reach a different result. We are indeed free to do so. In fact, the dissent presents a compelling argument. The problem is that Goetz has not made that argument on appeal. We do not make a practice of developing arguments for appellants. *State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987). Nor do we ordinarily consider arguments that are not specifically raised on appeal. *Riley v. Town of Hamilton*, 153 Wis. 2d 582, 588, 451 N.W.2d 454 (Ct. App. 1989). There is no reason to make an exception here.

*By the Court.*—Order reversed and cause remanded.

¶ 19. Hoover, P.J. (*dissenting*). I conclude that reasonable people in Goetz's position would have believed they were in custody. I therefore would affirm.

¶ 20. It is first necessary to sample by way of illustration, rather than survey, some of the additional relevant facts. As the police were initially executing the warrant, an officer stood outside brandishing a firearm and threatening to shoot Goetz's dog, which had run out of the house in an attempt to attack a police dog at

the scene.[1] After the police entered Goetz's house, Goetz was given a copy of the search warrant, told to sit down and then interviewed for ten to fifteen minutes before she made the statements the circuit court suppressed. Goetz testified that she was told (1) where to sit, (2) where she was required to be, (3) when she could move and (4) where she could move.

¶ 21.  It is well established that the police may constitutionally seize a person without transforming the seizure into custody for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966). For example, in *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984), the Supreme Court held that persons temporarily detained pursuant to a routine traffic stop are not "in custody" for the purposes of *Miranda*. Relying on *Berkemer*, the seventh circuit held that *Miranda* warnings are not required where a suspect has been detained pursuant to a *Terry*[2] stop. *See United States v. Boden*, 854 F.2d 983, 995 (7th Cir. 1988).

¶ 22.  But I cannot subscribe to the cases that hold that a person who is "detained" during the execution of a search warrant is not in custody for purposes of *Miranda*. *See Michigan v. Summers*, 452 U.S. 692, 702 (1981) (absent special circumstance or prolonged restraint, detention during search warrant execution not "custody" because it was "substantially less intrusive" than an arrest); *accord, United States v. Burns*, 37 F.3d 276, 281 (7th Cir. 1994). These cases represent an erosion of rights that were fragile from their inception.

[1] The State throws this evidence into the irrelevancy bin evidently because in its view this incident could not possibly inform on how a reasonable person would view his or her situation based upon the circumstances as a whole.

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

It is well-established that state courts, under state law, are always free to take a more expansive view of individual rights than do federal courts under federal constitutional law. *See e.g., Pruneyard Shopping Center v. Robins*, 447 U.S. 74 (1980). *See also Oregon v. Hass*, 420 U.S. 714 (1975); Comment, *Developments in the Law—The Interpretation of State Constitutional Rights*, 95 Harv. L. Rev. 1324 (1982); Brennan, *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (1977); Comment, *Rediscovering the Wisconsin Constitution: Presentation of Constitutional Questions in State Courts*, 1983 Wis. L. Rev. 483 (1983).

*State v. Kramsvogel*, 124 Wis. 2d 101, 130, 369 N.W.2d 145 (1985) (Bablitch, J., dissenting).[3]

¶ 23.   The majority has correctly recited the law applicable to custody determinations. But I view as the touchstone the rule that, in deciding whether a suspect is in custody, courts look at "how a reasonable man in the suspect's position would have understood his situa-

---

[3] *See also, e.g., State v. Miller*, 202 Wis. 2d 56, 65–66, 549 N.W.2d 235 (1996) (although First Amendment and art. I, § 18, serve same underlying purposes and are based on same precepts, Wisconsin's analysis of freedom of conscience as guaranteed by Wisconsin Constitution not constrained by boundaries of protection United States Supreme Court set for federal provision); *State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993) (Wisconsin courts bound only by United States Supreme Court on questions of federal law.); *State v. Eason*, 2001 WI 98 ¶ 22, 245 Wis. 2d 206, 629 N.W.2d 625 (*United States v. Leon*, 468 U.S. 897 (1984), good faith exception recognized in Wisconsin, but only if State also demonstrates process used in obtaining search warrant included significant investigation and review by either police officer trained and knowledgeable in probable cause requirements or knowledgeable government attorney. This process, additional to that in *Leon*, required by art. I, § 11, of the Wisconsin Constitution.).

tion." *Berkemer*, 468 U.S. at 442. This determination is based on the "totality of the circumstances." *United States v. Fazio*, 914 F.2d 950, 954 (7th Cir. 1990). "The accused's freedom to leave the scene and the purpose, place and length of interrogation are all relevant factors in making this determination." *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir. 1985).

¶ 24. The problem with *Summers* and *Burns* is that they depart from these very custody factors that they acknowledge, and replace them with such considerations as the comparatively nonthreatening nature of the detention, the intrusiveness relative to the search itself and minimal added public stigma. What do these have to do with how a reasonable person in the detainee's position would have understood his or her situation? I submit that these factors merely rationalize the fiction that reasonable people in Goetz's position would not perceive themselves to be in custody. We should be loath to indulge legal fictions to guide us to a result. They do not serve the law because they do not serve those who must abide by the law. Moreover, they compromise the rule of law because they are easily discerned as a lapse in analytical honesty, a legal shunt. We deceive ourselves if we believe that citizens will embrace our attempt to describe paste and declare it a diamond.

¶ 25. I would conclude that the invention I perceive in the *Summers* and *Burns* decisions compels their rejection under our state constitution's protection. I therefore respectfully dissent.