COURT OF APPEALS
DECISION
DATED AND FILED

May 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2018AP1853-CR**
**2018AP1854-CR**

Cir. Ct. Nos. **2015CF1004**
**2016CF44**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LEROY E. JOHNSON,

DEFENDANT-APPELLANT.

APPEAL from judgments of the circuit court for Kenosha County: MARY KAY WAGNER, Judge. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Davis, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated cases, Leroy E. Johnson appeals from judgments convicting him of numerous crimes. He contends that the circuit court erred by (1) denying his motion to suppress his statement to police; (2) denying his request to admit evidence of a victim's prior sexual conduct; and (3) admitting evidence that he kept a room in his house for viewing sexually explicit materials. We reject Johnson's arguments and affirm.

¶2 On April 11, 2013, Johnson approached a young female with the initials J.L.R., pointed a gun at her, and demanded that she get into his car. J.L.R. complied. Johnson drove J.L.R. around Kenosha and sexually assaulted her. Eventually, J.L.R. escaped from Johnson's car.

¶3 On October 22, 2015, Johnson approached another young female with the initials H.A.B., pointed a gun at her, and demanded that she get into his car. H.A.B. ran away and was able to provide police with a vehicle description and partial license plate number of Johnson's car.

¶4 That same day, Johnson approached another young female with the initials L.M.B., grabbed her by her shirt collar, pointed a gun at her, and demanded that she get into his car. L.M.B. tried to give Johnson money, which he took before demanding again that she get into his car. L.M.B. kicked Johnson and ran away.

¶5 From H.A.B.'s vehicle description and partial license plate number, police determined that the suspect vehicle was registered to Joyce Gielas, who lived with Johnson. Police went to Gielas' home and met Johnson, who confessed to approaching L.M.B, pointing a gun at her, and attempting to drag her into his car. Johnson said that he was "lonely" and explained that he "wasn't going to rape [L.M.B.]"; rather, he "was just going to make her drive around with him in the vehicle." Police placed Johnson under arrest.

¶6    After Johnson's arrest, police continued to investigate J.L.R.'s kidnapping and sexual assault. DNA taken from J.L.R.'s rape kit matched Johnson's profile. The cases involving the three victims were subsequently consolidated for trial.

¶7    Prior to trial, Johnson moved to suppress his statement to police on the ground that he was not given *Miranda*[1] warnings. The circuit court held an evidentiary hearing at which only Detective Patrick Patton testified. At the conclusion of the hearing, the court denied the motion, determining that Johnson was not in custody when he gave his statement and therefore not entitled to *Miranda* warnings.

¶8    On the morning of trial, the parties discussed Johnson's intent to admit evidence of J.L.R.'s prior sexual conduct. J.L.R. had engaged in sexual intercourse with a different adult male approximately an hour before encountering Johnson.[2] She did not initially disclose that fact to police for fear that her mother would find out. Johnson argued that this evidence was relevant to J.L.R.'s credibility, as it indicated that she might lie to stay out of trouble. The circuit court ruled the evidence inadmissible under Wisconsin's rape shield law, WIS. STAT. § 972.11 (2017-18).[3]

¶9    During trial, Johnson objected to the State introducing evidence that he kept a room in his house for viewing sexually explicit materials. The room contained two televisions, a chair, hundreds of X-rated videos, sex toys, lubricants,

---

[1]    *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]    Although J.L.R. perceived the earlier sexual intercourse to be consensual, she could not legally consent due to her age.

[3]    All references to the Wisconsin Statutes are to the 2017-18 version.

and towels. Johnson asserted that the evidence was irrelevant and unfairly prejudicial. The State argued that it showed Johnson's intent. The circuit court agreed with the State and concluded that the evidence was admissible.

¶10 Ultimately, the jury found Johnson guilty of kidnapping, first-degree sexual assault of a child, two counts of attempted kidnapping, theft, attempted abduction of a child, child enticement, and false imprisonment. The circuit court imposed an aggregate sentence of sixty years of initial confinement and twenty years of extended supervision. This appeal follows.

¶11 On appeal, Johnson first contends that the circuit court erred by denying his motion to suppress his statement to police. He maintains that the statement should have been suppressed because he was in custody and not given *Miranda* warnings.

¶12 The warnings prescribed by *Miranda* are required only when a suspect is in custody. *See State v. Morgan*, 2002 WI App 124, ¶10, 254 Wis. 2d 602, 648 N.W.2d 23. A suspect is in custody for *Miranda* purposes when his or her "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (citation omitted).

¶13 In determining whether a suspect is in custody for *Miranda* purposes, courts must consider the totality of the circumstances. *Morgan*, 254 Wis. 2d 602, ¶12. Relevant factors include the suspect's freedom to leave the scene; "the purpose, place, and length of the interrogation; and the degree of restraint." *Id.* When considering the degree of restraint, courts consider "whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to

another location, whether questioning took place in a police vehicle, and the number of officers involved." *Id.*

¶14    "The test for custody is an objective one." *State v. Goetz,* 2001 WI App 294, ¶11, 249 Wis. 2d 380, 638 N.W.2d 386.  Courts ask "whether a reasonable person in the suspect's position would have considered himself or herself to be in custody." *Id.*

¶15    In reviewing a decision denying a motion to suppress evidence, this court upholds the circuit court's findings of fact unless they are clearly erroneous. *State v. Mosher,* 221 Wis. 2d 203, 211, 584 N.W.2d 553 (Ct. App. 1998).  However, whether a person is in custody for *Miranda* purposes presents a question of law, which we review de novo. *Mosher,* 221 Wis. 2d at 211.

¶16    Based on the testimony at the suppression hearing, we conclude that Johnson was not in custody at the time he gave the challenged statement.  As noted above, police were at Johnson's home to perform a check on a vehicle registered to the same address.  According to Patton, Johnson invited police inside after having a "[c]ordial" conversation with them in his driveway.  Johnson offered them seats in his living room.  He was never handcuffed, his movements were not restricted, and police never drew their weapons.  In all, Patton's questioning lasted approximately ten minutes before Johnson gave his statement regarding L.M.B.  Johnson makes much of the fact that four officers were present at his home; however, that factor alone would not lead a reasonable person in his position to have considered himself or herself to be in custody.  Johnson could have walked out his front door had he wanted to or, as the circuit court remarked, "just tell the police to get out."  At any rate, given the totality of the circumstances, the court properly denied Johnson's motion to suppress.

¶17 Johnson next contends that the circuit court erred by denying his request to admit evidence of J.L.R.'s prior sexual conduct. Again, the circuit court ruled the evidence inadmissible under Wisconsin's rape shield law, WIS. STAT. § 972.11.

¶18 The admission or exclusion of evidence is a discretionary circuit court decision and will not be disturbed absent an erroneous exercise of discretion. *See State v. Doerr*, 229 Wis. 2d 616, 621, 599 N.W.2d 897 (Ct. App. 1999). We will uphold the court's decision if discretion was exercised in accordance with accepted legal standards and the facts of record, and if there was a reasonable basis for the court's determination. *State v. Hammer,* 2000 WI 92, ¶21, 236 Wis. 2d 686, 613 N.W.2d 629.

¶19 Wisconsin's rape shield law generally prohibits the introduction of any evidence of the complainant's prior sexual conduct "regardless of the purpose." WIS. STAT. § 972.11(2)(c);[4] *State v. Ringer*, 2010 WI 69, ¶25, 326 Wis. 2d 351, 785 N.W.2d 448. At times, however, the statute must yield to the accused's right to present a defense. *See State v. Williams*, 2002 WI 58, ¶69, 253 Wis. 2d 99, 644 N.W.2d 919. We review de novo whether applying the statute to a particular fact situation deprives a defendant of a constitutional right. *Id.*

¶20 A defendant's constitutional right to present evidence is limited to the presentation of "relevant evidence not substantially outweighed by its prejudicial effect." *See State v. Pulizzano*, 155 Wis. 2d 633, 646, 456 N.W.2d 325 (1990). The

---

[4] The statute enumerates three narrow exceptions; however, none of them apply to this case.

6

defendant must put forth a sufficient offer of proof to establish a constitutional right to present otherwise excluded evidence. *Id.* at 656.

¶21    We agree with the circuit court that the rape shield law barred the admission of evidence of J.L.R.'s prior sexual conduct. We further conclude that the law's application did not deprive Johnson of his constitutional right to present evidence. As noted by the State, Johnson failed to show that the excluded evidence was relevant to a material issue. Although J.L.R.'s credibility was a subject at trial, Johnson's defense was that she misidentified him, not that she intentionally lied about him sexually assaulting her. Accordingly, the evidence was not necessary to the case, and the circuit court correctly denied Johnson's request to admit it.

¶22    Finally, Johnson contends that the circuit court erred by admitting evidence that he kept a room in his house for viewing sexually explicit materials. He renews his assertion that the evidence was irrelevant and unfairly prejudicial.

¶23    Although a close call, we are satisfied that the circuit court properly admitted the evidence in question to prove that Johnson's actions were sexually motivated.[5]    Again, Johnson's story to police was that he approached L.M.B., pointed a gun at her, and attempted to drag her into his car just so that he could "make her drive around with him." The fact that he devoted a substantial amount of living space to the exclusive viewing of sexually explicit materials suggests that he had other things in mind. While this suggestion may have been prejudicial to Johnson's case, it was not unfairly so. In any event, the circuit court mitigated the

---

[5] To prevail on charges of kidnapping and attempted kidnapping, the State had to prove that Johnson intended the victims to be "held to service against [their] will." *See* WIS JI—CRIMINAL 1280. That phrase includes "sexual acts performed at the command of another." *Id.*, n. 4.

danger of unfair prejudice by giving the jury a limiting instruction at Johnson's request.[6]

¶24    We also conclude that any error in admitting this evidence was harmless.  Even without this evidence, the jury still would have heard testimony from J.L.R. clearly showing that Johnson's crimes were sexually motivated. Moreover, the other evidence against Johnson was strong.  All three victims identified him as the perpetrator.  Their allegations were corroborated by DNA evidence from J.L.R.'s rape kit; video footage showing Johnson approaching H.A.B.; H.A.B.'s description of Johnson's car, which was registered to a woman he lived with; and Johnson's incriminating statement to police concerning L.M.B.

¶25    For these reasons, we affirm.

*By the Court.*—Judgments affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] The instruction stated in part, "evidence has been presented that the defendant was in possession of explicit materials in the upstairs loft.  If you find that this did occur, you should consider it only on the issue of intent to cause the victims to be held to service against their wills."