COURT OF APPEALS
DECISION
DATED AND FILED

March 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP407-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF348

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CHRISTOPHER M. BRIMM,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Washington County: TODD K. MARTENS, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher M. Brimm appeals from a judgment convicting him of two counts of repeated sexual assault of a child. He contends that statements he made to police before his arrest should have been suppressed because they were not preceded by the warnings required under ***Miranda v. Arizona***, 384 U.S. 436 (1966), and because the statements were not voluntary. For the reasons explained below, we reject Brimm's arguments and affirm his conviction.

## BACKGROUND

¶2 West Bend police obtained information indicating that Brimm had repeatedly sexually assaulted his daughters. On July 18, 2018, two West Bend police officers, Lieutenant Eric Grinwald and Detective Brian McAndrews, arrived at Brimm's residence in Racine County to investigate these allegations. Brimm, who was present along with his parents, agreed to talk with the officers and asked that they speak in the back yard of the residence.

¶3 In the back yard, Grinwald advised Brimm that they were investigating disclosures that Brimm's children had made. Brimm asked whether the disclosures were sexual in nature; Grinwald confirmed they were. At points during their conversation, Brimm went inside by himself to get a pack of cigarettes, a soda, and to use the restroom. Eventually, to avoid speaking about the disclosures within earshot of his parents, Brimm asked Grinwald if they could continue the conversation in the front yard and then at a park down the street. Grinwald went with Brimm to the park while McAndrews stayed at the residence.[1]

---

[1] At some point while Grinwald and Brimm were speaking, a Racine deputy sheriff arrived at the residence. McAndrews asked the deputy sheriff, who was dressed in police uniform, to keep his distance because he was in a marked squad car. The deputy sheriff remained in his car down the street from Brimm's residence.

¶4      At the park, Grinwald and Brimm continued to talk about the allegations.   At this point, Brimm began making incriminating admissions. Specifically, he told Grinwald that his children were telling the truth about the sexual assaults.  Brimm also divulged that he knew the assaults happened but could not remember any of the details because he was an alcoholic at that time.  Brimm eventually asked Grinwald, "[w]ell, what will happen next[?]"  Grinwald replied that he would like to continue their conversation and obtain a written statement. Brimm agreed to continue talking with Grinwald and suggested that they go back to the residence because his parents had left by then.

¶5      When they returned to the residence, Grinwald drafted a written statement that summarized their discussion.  While Grinwald was writing, Brimm went outside to smoke a cigarette.   When he finished writing the statement, Grinwald read it to Brimm, who signed it.  Before completing the written statement, Grinwald had not told Brimm the specific allegations that his children made.  After Brimm signed the statement, Grinwald confronted him about some of those details. Brimm admitted having had sexual contact with his children.   Grinwald then informed Brimm that he would be taken into custody, which ended the interview. The entire interaction with Brimm lasted about two hours.

¶6      The State charged Brimm with six felonies, including three counts of repeated sexual assault of a child.  Brimm moved to suppress his statements to police, arguing they were elicited in violation of his *Miranda* rights and were not made voluntarily.  The circuit court held a *Miranda-Goodchild*[2] hearing at which the officers present during Brimm's questioning testified.

---

[2] *See State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

¶7      After hearing the testimony, the circuit court denied Brimm's motion to suppress. As to the claimed *Miranda* violation, the court found that Brimm initially agreed to speak to the officers, never asked to terminate the interview, was not restrained in any way during his conversations with Grinwald, was not "told that he wasn't free to leave," "was not directly confronted with the incriminating evidence until late in the interrogation," was not taken to the police station, and chose three separate locations for the interview "to start, and continue, and conclude." In addition, the court found that the interview was not "particularly long," "[t]he tone of the questioning was not confrontational or accusatory," "[t]here was no physical contact" between Brimm and the officers, Brimm was allowed to hold onto his cell phone, and he was not told that he was under arrest or handcuffed. Based upon these findings, the circuit court concluded that "a reasonable person would not consider himself in custody," and thus the police did not violate Brimm's constitutional rights by not giving him *Miranda* warnings before questioning him.

¶8      The circuit court relied on many of the same findings in rejecting Brimm's voluntariness challenge. In the court's view, the facts showed that the officers' conduct was not "improper in any way" and that the State had demonstrated that Brimm's statements were voluntary. Brimm subsequently entered an *Alford*[3] plea to two counts of repeated sexual assault of the same child.

**DISCUSSION**

¶9      In reviewing a circuit court's order on a motion to suppress, we uphold the court's factual findings unless they are clearly erroneous. *State v. Lonkoski*, 2013 WI 30, ¶21, 346 Wis. 2d 523, 828 N.W.2d 552. However, "[w]e independently review the circuit court's application of constitutional principles to

---

[3] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

4

those" findings. ***State v. Henderson***, 2001 WI 97, ¶16, 245 Wis. 2d 345, 629 N.W.2d 613.

¶10 Brimm takes issue with only one of the circuit court's findings of fact. He contends that he "was never left alone, and was accompanied by at least one officer at all times." This assertion is not supported by the record. Grinwald testified that Brimm was allowed to smoke and use the restroom by himself at various points during questioning. Brimm has not shown that the court clearly erred in finding that he was allowed to be by himself at times.

¶11 We next consider Brimm's contention that he was "in custody" for ***Miranda*** purposes. "Custody means 'a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" ***State v. Quigley***, 2016 WI App 53, ¶32, 370 Wis. 2d 702, 883 N.W.2d 139 (citation omitted). To determine whether a person is in custody for ***Miranda*** purposes, courts look at the totality of the circumstances and consider "whether a reasonable person in the suspect's position would have considered himself or herself to be in custody." ***Lonkoski***, 346 Wis. 2d 523, ¶27 (citation omitted). Specifically, courts consider "the degree of restraint; the purpose, place, and length of the interrogation; and what has been communicated by police officers." ***State v. Bartelt***, 2018 WI 16, ¶32, 379 Wis. 2d 588, 906 N.W.2d 684. With regard to the degree of restraint, "we consider: whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved." ***State v. Morgan***, 2002 WI App 124, ¶12, 254 Wis. 2d 602, 648 N.W.2d 23.

¶12    Based on the facts as found by the circuit court, Brimm was not in custody at the time he gave the challenged statements. Although Brimm was never given *Miranda* warnings, he agreed to speak with police and was never told that he was under arrest or that he was not free to leave. The questioning took place in multiple locations near and inside his residence, not at a police station. At no point during questioning did Brimm ask to stop the interview. The interrogation lasted approximately two hours, during which he was allowed to smoke cigarettes, get a soda, and use the restroom.

¶13    As to the degree of restraint, Brimm was not handcuffed or otherwise physically restrained at any point before his arrest. He was not frisked, and the police did not brandish their weapons. Brimm directed where questioning would occur by requesting to move locations to continue the conversation. Although three officers were present during the interrogation, Grinwald alone conducted the questioning while the Racine deputy sheriff remained outside in his car. Given the totality of the circumstances, the circuit court correctly concluded that Brimm was not in custody at the time he made the incriminating statements.

¶14    Brimm's arguments to the contrary are not persuasive. Brimm asserts that he believed he was not free to leave and that the officers intended to arrest him after the interview, but the subjective beliefs of the participants are irrelevant because "[t]he test for custody is an objective one." *See State v. Goetz*, 2001 WI App 294, ¶11, 249 Wis. 2d 380, 638 N.W.2d 386. Brimm also argues that he was surrounded by three officers from two jurisdictions, was never left alone, and was followed by officers from location to location. However, Brimm only had contact with two of the officers, and Grinwald alone conducted the questioning. In addition, though Brimm was alone with the officers during questioning, this was largely due to his requests to move around his property and to the park so that his parents would

not overhear the discussion. Finally, Brimm's argument that he was never left unaccompanied is not supported by the record, and given the other facts surrounding the police interaction, the officers' presence does not compel a conclusion that he was in custody.

¶15 Brimm's argument that his statements to the police were involuntary is similarly unpersuasive. "[S]tatements are voluntary if they are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by … the State exceeded the defendant's ability to resist." *State v. Vice*, 2021 WI 63, ¶29, 397 Wis. 2d 682, 961 N.W.2d 1 (citation omitted). We evaluate voluntariness in light of all the circumstances surrounding the interrogation. *Id.* at ¶30. First, we must determine whether there is affirmative evidence of coercion or improper police practices. *State v. Moore*, 2015 WI 54, ¶56, 363 Wis. 2d 376, 864 N.W.2d 827. If such evidence exists, we weigh the police conduct against the defendant's personal characteristics. *State v. Clappes*, 136 Wis. 2d 222, 236, 401 N.W.2d 759 (1987).

¶16 In evaluating police conduct, we consider

> the length of the questioning, … the general conditions under which the statements took place, any excessive physical or psychological pressure brought to bear on the defendant, any inducements, threats, methods or strategies used by the police to compel a response, and whether the defendant was informed of the right to counsel and right against self-incrimination.

*State v. Hoppe*, 2003 WI 43, ¶39, 261 Wis. 2d 294, 661 N.W.2d 407.

¶17 Although Brimm was not given *Miranda* warnings, the totality of the circumstances does not show coercive or improper police conduct. The duration of

7

questioning was approximately two hours. The tone of the conversation was not threatening, and Brimm was allowed to smoke cigarettes, drink a soda, use the restroom, and keep his cell phone. Brimm was not handcuffed, and there was no evidence that the police used excessive physical or psychological pressures. Although the allegations may have been upsetting to Brimm, confronting a suspect with incriminating allegations is not improperly coercive. Brimm's argument that having one officer remain with him at all times was coercive is also unpersuasive. As mentioned above, Brimm was unaccompanied at certain points in the interview, and in any event, the mere presence of a police officer is not an improperly coercive tactic. Because we conclude the police did not use coercive or improper police conduct, we need not balance Brimm's "personal characteristics and those nonexistent pressures." *See Vice*, 397 Wis. 2d 682, ¶31.

*By the Court*.—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).