STATE of Wisconsin, Plaintiff-Respondent,

v.

Zan MORGAN, Defendant-Appellant.

Court of Appeals

*No. 01–2148–CR. Submitted on briefs February 12, 2002.—Decided April 4, 2002.*

2002 WI App 124

(Also reported in 648 N.W.2d 23.)

603

605

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Tim Provis*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Francisco Vasquez*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. VERGERONT, P.J. Zan Morgan appeals a judgment of conviction for possession of THC, second offense, in violation of Wis. Stat. § 961.41(3g)(e) (1999–2000).[1] Morgan contends the trial court erred in denying his motion to suppress an inculpatory statement he made in response to a police officer's question without being given *Miranda* warnings.[2] We conclude

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Morgan was in custody when questioned by the officer and therefore his statement must be suppressed. Accordingly, we reverse and remand for a new trial.

## BACKGROUND

¶ 2. At the hearing on Morgan's motion to suppress, City of Madison Police Officer Henry Whyte testified as follows. On February 18, 1999, he went to an apartment building to investigate because a bag of marijuana was found in the freezer of an apartment that the tenant had vacated and intended to sublet. Officer Whyte met with a building security guard, Shawn Smith, to investigate the incident; Smith was also a part-time police officer. Both were armed. Officer Whyte was in plain clothes with his badge worn around his neck.[3]

¶ 3. Officer Whyte obtained permission from the tenant to search the apartment. He and Smith entered the apartment, locking the door after them. Officer Whyte found a bag of marijuana in the freezer and a duffel bag with crack cocaine and a handgun in a closet. Officer Whyte called his sergeant to tell him what he found and the sergeant said he would be right there. Meanwhile, Smith alerted Officer Whyte to the fact that someone was trying to enter the apartment with a key. Both Officer Whyte and Smith drew their guns. As soon as the person, later identified as Morgan, entered the apartment, Whyte identified himself as a police officer and told Morgan to stop.

¶ 4. Morgan ran from the apartment and Officer Whyte chased him, yelling for him to stop. When Officer Whyte caught up to Morgan, Morgan was attempting to get into the driver's seat of a car. Another adult male

---

[3] The record does not disclose what Smith was wearing.

was in the front passenger seat, and Officer Whyte thought there was a third adult male in the back seat, but that person was a child. Officer Whyte grabbed hold of Morgan and brought him to the trunk area of the car. Morgan did not offer any physical resistance after that and was cooperative. Officer Whyte handcuffed Morgan with his hands behind him, frisked him for weapons, found none, and sat him on the curb to the rear of the vehicle. Officer Whyte told Smith to watch Morgan, and he took the other adult, Dezel Jones, out of the car, put handcuffs on him, and sat him on the curb.

¶ 5. A police squad car arrived and Officer Whyte put both Morgan and Jones in the back of that squad car, both still handcuffed. Officer Whyte obtained Morgan's consent to search the car he had been trying to enter. On searching the car, the officer discovered a "blunt" in the car's ashtray.[4] By that time Officer Whyte's sergeant had arrived, as well as another officer driving another police squad car into which Officer Whyte transferred Jones.

¶ 6. Officer Whyte asked Morgan, who was still handcuffed and sitting in the back of the squad car, what he knew about the blunt in the ashtray of the vehicle.[5] According to Officer Whyte, Morgan responded that he and Jones were smoking the blunt before they got to the apartment that night. Before asking this question, Officer Whyte did not tell Morgan that he was under arrest, nor did he read to Morgan the *Miranda* warnings. At the time Officer Whyte asked

---

[4] A "blunt" is a cigar from which the tobacco has been removed and replaced with marijuana.

[5] Officer Whyte testified at one point that he asked Morgan "if he knew what was in the car, in the ashtray of the vehicle"; at a later point, he testified that he asked Morgan "what he knew about the blunt in the ashtray."

this question, he was conducting an investigation to determine what, if anything, Morgan had to do with the drugs and gun found in the apartment, as well as who owned or possessed the blunt found in the car. Officer Whyte agreed that Morgan "couldn't go anywhere" while seated in the back of the squad car.

¶ 7. The trial court denied Morgan's motion to suppress. After summarizing Officer Whyte's testimony, the court concluded that the officer had reasonable suspicion that a crime had been or was to be committed, justifying Morgan's detention under *Terry v. Ohio*, 392 U.S. 1 (1968). The court next determined that Officer Whyte's decision to place Morgan and Jones in handcuffs was reasonable. His decision to put them in squad cars was also reasonable, the court determined, since the events took place in the middle of winter. The court found that Officer Whyte separated Morgan and Jones once another police car arrived so that he could hold the situation stable and do further investigation. The court concluded that a reasonable person in Morgan's position would have believed that he was being temporarily detained, and that the detention was reasonable and understandable given the circumstances facing the officer, the season of the year, and Morgan's conduct. Therefore, the trial court ruled, *Miranda* warnings were not necessary.[6]

¶ 8. At trial, Officer Whyte testified that, in response to his question about the blunt, Morgan told him "we had been smoking it before." Morgan denied smoking the blunt. Jones testified that the blunt was his and he, but not Morgan, smoked it.

---

[6] The court also ruled that Morgan's response was voluntary and not coerced, but that issue is not before us on appeal.

## DISCUSSION

¶ 9. Morgan argues that the trial court erred in concluding that *Miranda* warnings were not necessary because, he asserts, he was "in custody" for *Miranda* purposes when Officer Whyte asked him about the blunt.

¶ 10. The prosecution may not use a defendant's statements stemming from custodial interrogation unless the defendant has been given the requisite warnings. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In *Miranda*, the Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way."[7] *Id.* Subsequently, the Court held that the *Miranda* safeguards attach when a "suspect's free-

---

[7] In the context of arguing that Morgan was not "in custody," the State asserts that "there was no major interrogation of Morgan," that the one question he was asked was one that "would be expected in the course of an investigatory stop." It is not clear to us whether the State intends to argue that Morgan was not under "interrogation" within the meaning of Fifth Amendment case law. The State says nothing further on this topic. "Interrogation" for *Miranda* purposes is express questioning, as well as any words or actions on the part of the police (other than those normally attendant to arrest and custody) "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Cunningham*, 144 Wis. 2d 272, 277, 423 N.W.2d 862 (1988) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). We see no basis for concluding that Officer Whyte's express question was not "interrogation," and the State has provided us with none. Nor does the State present any authority for what may be its implicit premise that the brevity of the exchange makes it not "interrogation." We have recently recognized that the brevity of

dom of action is curtailed to a 'degree associated with [a] formal arrest.' " *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). The relevant inquiry is how a reasonable person in the suspect's situation would understand the situation. *Berkemer*, 468 U.S. at 442.

¶ 11. In reviewing the trial court's decision, we accept that court's findings of historical fact unless they are clearly erroneous; however, whether a person is "in custody" for *Miranda* purposes is a question of law, which we review de novo based on the facts as found by the trial court. *State v. Mosher*, 221 Wis. 2d 203, 211, 584 N.W.2d 553 (Ct. App. 1998).

¶ 12. In determining whether an individual is "in custody" for purposes of *Miranda* warnings, we consider the totality of the circumstances, including such factors as: the defendant's freedom to leave; the purpose, place, and length of the interrogation; and the degree of restraint. *State v. Gruen*, 218 Wis. 2d 581, 594, 582 N.W.2d 728 (Ct. App. 1998). When considering the degree of restraint, we consider: whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is

---

the exchange is not controlling and may instead confirm the evocative power of the officer's question, stating that to conclude otherwise would be to discount a *Miranda* violation simply because the person quickly succumbed. *State v. Bond*, 2000 WI App 118, ¶ 22, 237 Wis. 2d 633, 614 N.W.2d 552, *aff'd by an equally divided court*, 2001 WI 56, 243 Wis. 2d 476, 627 N.W.2d 484. In the absence of a developed argument by the State, we will assume it does not intend to argue that, even if Morgan was "in custody" for *Miranda* purposes, he was not subject to interrogation.

restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved. *Id.* at 594–96.

¶ 13. In this case the dispute between the parties in part centers on the correct legal test to be applied for *Miranda* purposes when an individual has been detained in a *Terry* stop, and we begin by addressing this issue. The State asserts that the inquiry under *Miranda* involves two steps, the first of which is a determination of whether the defendant was validly detained pursuant to *Terry*. The State also asserts that the "question of whether a person was in custody for [F]ifth [A]mendment purposes is handled in essentially the same fashion as the question of whether a person has been arrested for [F]ourth [A]mendment purposes." We acknowledge that the analysis required by the Fourth Amendment and the analysis required by the Fifth Amendment are not always clearly distinguished in the case law.[8] However, the analyses are not the same.

---

[8] According to a number of commentators, the confusion arises because the United States Supreme Court in *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam), and later in *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984), defined the concept of "in custody" for *Miranda* purposes as the situation in which a suspect's freedom of action is curtailed to a degree associated with a formal arrest. There is disagreement among commentators and in lower courts whether this means that the Fourth Amendment question of whether a seizure is an arrest (and therefore requires probable cause rather than reasonable suspicion) is the same as whether a suspect is in custody for *Miranda* purposes. *See, e.g.,* Mark A. Godsey, *When Terry Met Miranda: Two Constitutional Doctrines Collide,* 63 FORDHAM L. REV. 715, 718–19, 734–41 (1994); Richard A. Williamson, *The Virtues (and Limits) of Shared Values: The Fourth Amendment*

¶ 14. The Fourth Amendment prohibition of unreasonable searches and seizures protects the personal

---

*and Miranda's Concept of Custody,* 1993 U. ILL. L. REV. 379, 391-95; Thomas Gerry Bufkin, Comment, *Terry and Miranda: The Conflict Between the Fourth and Fifth Amendments to the United States Constitution,* 18 MISS. C. L. REV. 199, 200-01 (1997); Note, *Custodial Engineering: Cleaning Up the Scope of Miranda Custody During Coercive Terry Stops,* 108 HARV. L. REV. 665, 668-69 (1995). There is apparently agreement among the commentators and the courts that the force permissible to detain suspects in a valid *Terry* stop has increased since *Terry* and *Berkemer* were decided, and this has made the relationship between the Fourth Amendment and the Fifth Amendment in the context of a *Terry* stop more significant. *See, e.g., United States v. Perdue,* 8 F.3d 1455, 1463-66 (10th Cir. 1993); Godsey, *supra,* at 728-33; Williamson, *supra,* at 396-408, Bufkin, *supra,* at 211-12; *Custodial Engineering, supra,* at 671-72; *see also United States v. Smith,* 3 F.3d 1088, 1096-97 (7th Cir. 1993).

The court in *State v. Swanson,* 164 Wis. 2d 437, 475 N.W.2d 148 (1991), abrogated Wisconsin's subjective test for arrest under the Fourth Amendment and adopted the test from *Berkemer*: "whether a reasonable person in the defendant's position would have considered himself or herself to be 'in custody' given the degree of restraint under the circumstances." *Swanson,* 164 Wis. 2d at 446-47 (citing *Berkemer,* 468 U.S. at 441-42, and *State v. Koput* 142 Wis. 2d 370, 380, 418 N.W.2d 804 (1988), which addressed the issue of whether the defendants were in custody for *Miranda* purposes). In a footnote the court in *Swanson* cited *United States v. Corral-Franco,* 848 F.2d 536, 541 (5th Cir. 1988), a case that adopted in a Fourth Amendment context the *Berkemer* standard to distinguish between an investigative *Terry* stop and the degree and duration of restraint associated with a formal arrest. *Swanson,* 164 Wis. 2d at 446 n.5. This court has followed *Swanson* and applied the *Berkemer* standard to cases deciding whether a seizure is an arrest under the Fourth Amendment. *See, e.g., State v.*

liberty interests of freedom of movement and freedom from governmental intrusion. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 242 (1973); *Terry*, 392 U.S. at 16. In order to protect against unreasonable seizures, the Fourth Amendment requires, with certain narrowly defined exceptions, that formal arrests, or seizures that resemble formal arrests, be supported by probable cause to believe that the individual has committed a crime. *See Michigan v. Summers*, 452 U.S. 692, 699–700 (1981). Recognizing the need for law enforcement to temporarily detain persons to investigate possible

---

*Vorgurger,* 2001 WI App 43, ¶ 14, 241 Wis. 2d 481, 624 N.W.2d 398, *review granted,* 2001 WI 88, 246 Wis. 2d 165, 630 N.W.2d 219 (Wis. May 8, 2001) (No. 00-0971-CR); *State v. Quartana,* 213 Wis. 2d 440, 449-50, 570 N.W.2d 618 (Ct. App. 1997).

However, the United State Supreme Court, while using a reasonable person standard to determine whether a person is seized within the meaning of the Fourth Amendment, *see Florida v. Royer,* 460 U.S. 491, 501-02 (1983) (plurality opinion) ("[A] show of official authority such that 'a reasonable person would have believed he [or she] was not free to leave.' "), has not used a reasonable person standard to determine when the restraint imposed in a detention becomes unreasonable unless supported by probable cause. In Royer, 460 U.S. at 501-04, the Court used the balancing test employed in *Terry* to decide whether the degree and duration of restraint exceeded that which was reasonable for an investigative stop and must therefore be supported by probable cause. The Court has done the same in subsequent decisions. *See e.g., United States v. Sharpe,* 470 U.S. 675, 685-88 (1985); *United States v. Hensley,* 469 U.S. 221, 228-29 (1985). Reasons why the standard for "in custody" for *Miranda* purposes is formulated according to the perception of a reasonable person in the suspect's situation, while the standard for an arrest under the Fourth Amendment is not, are discussed in Williamson, *supra,* at 404-05. *But see Custodial Engineering, supra,* at 672-78. We need not address these issues concerning the Fourth Amendment, because Morgan confines his challange on appeal to the lack of *Miranda* warnings.

criminal activity when there is not probable cause, the Court in *Terry*, 392 U.S. at 16–22, held that in certain circumstances temporary investigative stops are reasonable even though they are seizures and even though the officer does not have probable cause.[9] Under the Fourth Amendment the test is ultimately whether the officer's action was justified at its inception, and whether the intrusiveness of the particular seizure is reasonable given the totality of the circumstances; and reasonableness is determined by balancing the governmental interests in crime prevention against the individual's right to be free from governmental intrusion. *Terry*, 392 U.S. at 19–21, 22–27. Morgan does not challenge any of the officers' actions as unreasonable under the Fourth Amendment.

■

¶ 15. The Fifth Amendment protects a different interest—the right not to be compelled to incriminate oneself. *Miranda*, 384 U.S. at 467. The requirement for *Miranda* warnings is based on the need to protect the fairness of a criminal defendant's trial. *Schneckloth*, 412 U.S. at 240. The Court decided that without these safeguards, "the process of in[-]custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel [the indi-

---

[9] In order to meet the Fourth Amendment's requirement of "reasonablemenss," a temporary stop for investigative purposes must be justified by an officer's reasonable suspicion "in light of his or her experience" that some criminal activity has taken place or is taking place. *State v. Gruen*, 218 Wis. 2d 581, 590, 582 N.W.2d 728 (Ct. App. 1998). In addition, the detention must be temporary and employ the least intrusive means reasonably available to verify or dispel the officer's suspicion. *Id.* at 590-91.

vidual] to speak where [the individual] would not otherwise do so freely." *Miranda*, 384 U.S. at 467.

¶ 16. Thus, when we inquire whether a person is in custody for *Miranda* purposes, we do not focus only on the reasonableness of the police officer's conduct: that is relevant insofar as it has a bearing on how a reasonable person in the suspect's situation would perceive his or her situation, but it is not dispositive. Officers may act reasonably in detaining and restraining suspects, but, when the challenge is that a *Miranda* warning should have been given, the issue is whether those acts give rise to a custodial situation. *State v. Pounds*, 176 Wis. 2d 315, 322, 500 N.W.2d 373 (Ct. App. 1993).[10] For this reason the relevant factors—as we articulated them in *Gruen*, 218 Wis. 2d at 594–96, and have listed them in ¶ 12 of this decision—are directed to the duration and the degree of restraint. For this reason, too, we have recognized that even during a valid *Terry* stop a defendant may be considered "in custody" for Fifth Amendment purposes and entitled to *Miranda* warnings before questioning. *Gruen*, 218 Wis. 2d at 593. The fact that a defendant is detained pursuant to a *Terry* stop does not dispel the need for *Miranda* warn-

---

[10] In commenting on the distinction between the purpose of permitting a temporary detention under certain circumstances—to protect police officers and the general public—and the purpose of the *Miranda* rule—to protect the fairness of the criminal trial—the Seventh Circuit has said: " '[T]here is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment.' Accordingly, a completely different analysis of the circumstances is required. [For *Miranda* purposes, t]he inquiry is much narrower. The number of relevant factors is severely limited." *Smith*, 3 F.3d at 1097 (citations omitted).

ings, but is simply one of the factors to consider as part of the totality of the circumstances to determine whether a reasonable person in the defendant's position would have considered himself or herself "in custody" given the degree of restraint. *Gruen,* 218 Wis. 2d at 594.[11]

■

¶ 17. Applying the factors we articulated in *Gruen,* we conclude that a reasonable person in Morgan's situation would have considered himself or herself in custody given the degree of restraint. The court found that the time between when he was hand-cuffed and when he was asked the question about the blunt was "very short" and, while there is no direct testimony on that time span, it is reasonable to infer from the record that the duration was not such as to weigh in favor of a conclusion of "in custody." However, we conclude that other factors would lead a reasonable person in Morgan's situation to believe he or she was in custody. Morgan was handcuffed; he was frisked; he was put handcuffed in a squad car with another suspect and then, upon the arrival of another squad car, the other suspect was put in that squad car so that Morgan was alone; and there were four officers on the scene at the time of questioning, plus Smith. Although no gun was drawn on Morgan in the squad car, Officer Whyte and Smith had both drawn their guns on Morgan when he entered the apartment. The questioning of Morgan took place in a squad car, which, based on Officer

---

[11] Since we decided *Gruen,* the Wisconsin supreme court, citing *Berkemer,* 468 U.S. at 440, has stated that "if a detained motorist is treated in such a manner that he or she is rendered 'in custody' for practical purposes, *Miranda* protections are triggered." *State v. Griffith,* 2000 WI 72, ¶ 69 n.14, 236 Wis. 2d 48, 613 N.W.2d 72.

Whyte's own testimony, Morgan could not leave. Only a single question is involved in this appeal, but the question directly asks about Morgan's connection to contraband found in the car Morgan was entering.

■

¶ 18. The trial court considered that the fact that Morgan was not removed from the scene weighed against a determination that he was in custody. However, Morgan was physically moved by the officer from the car he was entering to the curb, and from the curb to the police squad car. As stated in *United States v. Smith*, 3 F.3d 1088 (1993), "[h]is movement was curtailed as if he were handcuffed to a chair in a detective's office or placed in a holding pen in a station house or put behind bars." *Smith*, 3 F.3d at 1097 (concluding that the suspect, handcuffed, frisked, removed from the taxicab in which he was riding, separated from his property and his associates, told to sit at a specific place on the grass, and outnumbered by police officers, was in custody for *Miranda* purposes).

¶ 19. The trial court also apparently considered that the cold weather here weighed against a determination of "in custody" for *Miranda* purposes, and the State makes that argument on appeal. However, this case is not factually similar to *Gruen*, 218 Wis. 2d at 596–97, on which the State relies. In *Gruen*, the police officer came upon a car stuck in a snow bank at 1:30 a.m. and observed Gruen walking away from the car. *Id.* at 586. The officer proceeded to stop Gruen to ask him about the car. *Id.* However, because the officer was outside his jurisdiction, he called for another officer from the appropriate municipality. *Id.* at 586–87. The officer testified that while waiting for the other officer, it was so cold outside that he asked Gruen if he wanted to have a seat in the officer's police van and Gruen

accepted the offer. *Id.* at 587. In analyzing these facts, we considered it significant that the officer asked Gruen if he wanted to have a seat in the police van because of the cold, rather than ordering Gruen to get into the van. *Id.* at 596. We reasoned that "[a] reasonable person is less likely to believe he or she is in custody when he or she is asked, rather than ordered, to do something by a police officer."[12] *Id.*

¶ 20. Here, Officer Whyte testified that when a police squad car arrived, he "put them both [Morgan and Jones] into the squad car." There is no testimony, or reasonable inference from the testimony, that the officer asked Morgan if he wanted to get into the squad car, or that Morgan had any choice about getting into the squad car, or that Officer Whyte even mentioned the cold. In these circumstances, a reasonable person put into a police squad car is not less likely to believe he or she is in custody simply because it is cold outside.

---

[12] Other factors relevant to our conclusion that Gruen was not "in custody" for *Miranda* purposes were: Gruen was not handcuffed; although he was in the police van, he was not locked in when he was questioned because the officer opened the door and spoke to Gruen while standing on one of the van's steps; the detention was about ten to fifteen minutes, which we considered reasonable given that the officer had to wait for the officer from the appropriate municipality; Gruen was questioned at the scene of the crime; he was frisked, but no guns were drawn on him and he was not ordered to the ground; only the two officers were present; and there were only three "short" general, common-sense investigatory questions: "What happened?," "Oh, so you were driving then?," and "Well, then who was driving?" *Gruen*, 218 Wis. 2d at 597–98.

¶ 21. The State also points to cases, cited in *State v. Swanson*, 164 Wis. 2d 437, 475 N.W.2d 148 (1991), holding that the use of handcuffs does not necessarily transform a custodial stop into an arrest. *Swanson*, 164 Wis. 2d at 448 (citing *United States v. Glenna*, 878 F.2d 967, 972 (7th Cir. 1989), and *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983)). However, we do not consider one particular factor in isolation; rather, we look at all relevant factors as they together bear on the suspect—the totality of the circumstances. *See Gruen*, 218 Wis. 2d at 594.

¶ 22. Finally, the State contends that in deciding whether a reasonable person in the defendant's position would believe himself or herself to be in custody, we must define a "reasonable person" as an "innocent person" according to *United States v. Corral-Franco*, 848 F.2d 536, 540 (5th Cir. 1988). Then, relying on *Swanson*, 164 Wis. 2d at 449, and *State v. Quartana*, 213 Wis. 2d 440, 450–51, 570 N.W.2d 618 (Ct. App. 1997), the State argues that Morgan was not in custody because a reasonable innocent person in his situation would expect to be permitted to leave once the officer had the situation under control and had resolved any ambiguity as to whether the person had committed a crime.

¶ 23. Although no Wisconsin court has specified that the reasonable person for *Miranda* analysis is the "reasonable innocent person," we view the addition of "innocent" as a clarification rather than a change in the "reasonable person" standard. The court in *Corral-Franco*, 848 F.2d at 540, was relying on an earlier Fifth Circuit decision, *United States v. Bengivenga*, 845 F.2d 593 (5th Cir. 1988), which explained that the reasonable

621

person through whom we view the situation for *Miranda* purposes "must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *Bengivenga*, 845 F.2d at 596. This is simply another way of saying that the standard is the objective one of the reasonable person, not the subjective one of the suspect in the particular case, who may assume he or she is being arrested because he or she knows there are grounds for an arrest.[13]

¶ 24. However, although we agree with the State that for purposes of *Miranda*, we should consider a reasonable innocent person in Morgan's situation, we do not agree with the implication of its argument that our inquiry here is whether a reasonable innocent person would understand that if that person answered Officer Whyte's questions, and the answers showed he

---

[13] Although the United States Supreme Court has apparently not held that the "reasonable person" test for *Miranda* purposes is a "reasonable innocent person," it has made clear that the reasonable person test for purposes of deciding whether a seizure occurred under the Fourth Amendment presupposes an innocent person. *Florida v. Bostick*, 501 U.S. 429, 437–38 (1991) (remanding for an evaluation of whether there was a "seizure" and, in that context, rejecting the defendant's argument that a police search of his bag violated his Fourth Amendment rights because "no reasonable person would freely consent to a search of luggage that he or she knows contains drugs"). The *Bostick* court cited language from *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988), as agreeing with this principle: "This 'reasonable person' standard . . . ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached."

or she was innocent, the person would be allowed to leave. The point of the *Miranda* warnings is to protect one's right not to answer questions when the answers might incriminate oneself. It is not logical to decide whether those warnings should be given by assuming that an innocent person would answer those questions, would thereby convince the officer he or she is innocent, and so would be allowed to leave. In *Miranda*, the Supreme Court specifically rejected the argument that an unfettered right to detention for interrogation should be allowed because it would ultimately benefit the person questioned, in that once police inquiry determines there is no reason to believe the person has committed any crime, the person will be released without the need for further formal procedures. *Miranda*, 384 U.S. at 482. The Supreme Court stated: "Custodial interrogation . . . does not necessarily afford the innocent an opportunity to clear themselves." *Id.*

¶ 25. Neither *Swanson* nor *Quartana* provides authority to the contrary. Both concerned routine traffic stops. Both addressed the question whether the stops—including giving field sobriety tests in the former and, in the latter, transporting the suspect back to the scene of the accident which he had left and giving field sobriety tests there—were reasonable under *Terry* or were arrests not supported by probable cause. In both cases the courts decided that the officers' activities were reasonable under *Terry*, concluding that reasonable persons in the suspects' situations would understand that they were free to leave after passing the field sobriety tests. *Swanson*, 164 Wis. 2d at 449; *Quartana*, 213 Wis. 2d at 451. These cases do not suggest that when we are deciding whether a person is in custody for *Miranda* purposes and the situation is not a routine

traffic stop, we are to assume a reasonable person is one who is innocent and answers the question in an exculpatory manner.

¶ 26. We conclude that Morgan was in custody when he was questioned by Officer Whyte, and therefore *Miranda* warnings were required to safeguard his privilege against self-incrimination. Because Morgan did not receive *Miranda* warnings prior to responding to Officer Whyte's question, his statement in response must be suppressed. Because it was not suppressed, we reverse and remand for a new trial.

*By the Court.*—Judgment reversed and cause remanded with directions.