State of Wisconsin, Plaintiff-Respondent,
v.
Nathan Speers, Defendant-Appellant.
No. 2004AP89-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 20, 2005.
Before Brown, Nettesheim and Snyder, JJ.
¶ 1 PER CURIAM.
Nathan Speers pled no contest to four drug offenses. He appeals from the judgment of conviction and the order denying his postconviction motion. We agree with the circuit court that the police were not involved in the search of Speers that led to the discovery of drugs on his person before he entered a rave dance/concert venue, that drugs found during the subsequent search of his automobile would have been inevitably discovered, and that Speers was not in custody when he made an incriminating statement and therefore Miranda[1] warnings were not required. We affirm the judgment and order.
¶ 2 Speers sought suppression of drug evidence and incriminating statements arising out of a search at the entrance to a rave dance/concert. The following facts are taken from the hearing on Speers' motion to suppress.
¶ 3 An event promoter sought to hold a rave dance/concert at the Sunnyview Exposition Center, which is managed by the Winnebago County Parks Department. The assistant manager of the exposition center informed the promoter that all dances held at Sunnyview must have a security plan approved by the Oshkosh Police Department. The promoter consulted with the police department about the security plan, which called for the promoter to supply his own security personnel. The plan required the promoter's security staff to search all persons seeking entry into the concert to locate drugs and to keep them out of the event. The promoter's security personnel were told to turn over any drugs to police at the event. The promoter briefed his security staff before the searches began. The police did not brief the security staff.
¶ 4 Speers arrived for the concert, and a member of the promoter's security staff informed Speers that he would be searched before entering the venue. During the pat-down of Speers, the searcher, who did not have any law enforcement training, discovered a small, clear baggie containing a white powder in one of Speers' pockets. The searcher turned the baggie over to Officer Lehman of the Oshkosh Police Department along with Speers' wallet. Officer Lehman asked Speers to accompany him to the police command post where the music was not so loud as to preclude conversation or the gathering of additional information. The officer escorted Speers by the arm. Speers initially denied any knowledge of the contents of the baggie. The officer identified Speers from the driver's license in the wallet. Another baggie was found inside Speers' wallet. After admitting to another officer, Officer Schenk, that the material in the first baggie was cocaine, Speers was arrested and given his Miranda rights. Speers declined to give consent to search his vehicle. Officer Schenk and other officers searched the parking lot until they located Speers' vehicle. A canine officer and her dog searched the vehicle; the dog alerted on the trunk and on a backpack and burlap-covered sack found inside the passenger compartment. Drugs were found in each location.
¶ 5 The Oshkosh Police Department liaison and supervisor at the event, Lieutenant Duff, testified at the suppression hearing that although he met with the promoter to discuss the security plan, the police did not instruct or direct the promoter's security staff at the event. The promoter's security plan was approved as first proposed by the promoter after an adjustment in the number of police officers during the peak time of the concert. The officers oversaw the concert but did not search patrons; the officers were available in case any disruptions broke out as patrons waited to be searched and admitted to the concert and in case the security staff located something that was to be barred from the concert, such as drugs, weapons or other prohibited items. In addition to a presence near the search areas, officers conducted periodic foot patrols around the facility. The promoter paid for law enforcement officers to be present. Lieutenant Duff overheard security staff inform patrons that they would be searched before entering the concert.
¶ 6 Based upon this evidence, the circuit court found that everyone entering the concert had to submit to a pat-down search. Patrons waiting to enter could easily see that searches were being performed and patrons had ample opportunity to dispose of contraband before reaching the front of the line. All patrons were informed of the search before it occurred and could choose whether to submit to a search or depart the premises without entering the concert. The court found that Speers chose to be searched in order to enter the concert, and that he gave his consent to be searched.
¶ 7 The court then turned to whether the search was a private action not covered by Fourth Amendment protections. State v. Rogers, 148 Wis. 2d 243, 246, 435 N.W.2d 275 (Ct. App. 1988).
The fourth amendment applies only to actions of government agents, not to private individuals or actions. The key question is whether the private party was acting as a governmental instrument or agent. The mere fact that government agents were present at the time of the search does not make it a governmental search.
For a search to be a private action not covered by the fourth amendment: (1) the police may not initiate, encourage or participate in the private entity's search; (2) the private entity must engage in the activity to further its own ends or purpose; and (3) the private entity must not conduct the search for the purpose of assisting governmental efforts. The defendant has the burden of proving by a preponderance of the evidence that the private party acted as an agent of the government. The determination that a search was a private search is a factual determination and will not be disturbed unless clearly erroneous.
Id. at 246-47 (citations omitted).
¶ 8 The court made findings under each of the Rogers factors. The court found that the police were there to provide assistance if a disturbance broke out or if the security staff located contraband. The promoter prepared and submitted the security plan. The police did not initiate, encourage or participate in the searches.
¶ 9 The private entity, the concert promoter, set up the searches for its own purpose: per the county's rules, the concert could not proceed without a security plan, and the promoter wanted a drug-free event. The security plan required searches for drugs and other prohibited items.
¶ 10 The court found that the promoter did not conduct the searches to assist governmental efforts. The promoter conducted the searches to provide a safe event and a drug-free environment. The police were in attendance to handle disturbances, not searches.
¶ 11 The circuit court concluded that, under the Rogers factors, the search was a private action not covered by the Fourth Amendment. Therefore, Speers enjoyed no Fourth Amendment protections in relation to the search.
¶ 12 The circuit court's findings are not clearly erroneous based on the evidence adduced at the suppression hearing, and the court properly analyzed the Rogers factors.
¶ 13 On appeal, Speers contends that the Rogers factors favor Fourth Amendment protections. He argues that the promoter's security staff were agents of the police, noting that the promoter's contract with the county provided that the police were to oversee the searches. While the contract may so provide, this was not the case in practice. The evidence at the suppression hearing supports the circuit court's findings that the police did not initiate, encourage or participate in the searches.
¶ 14 Speers characterizes the searches as a law enforcement drug interdiction effort. The record of the suppression hearing does not bear out Speers' contention. The record indicates that the promoter's intention to have a drug-free event motivated the searches. That drugs were turned over to the police does not change or undermine this motivation. Speers also overstates the role of the police at the pre-concert security staff briefing.
¶ 15 We also do not agree with Speers that the promoter conducted the searches to assist governmental efforts. Speers points to the presence of a canine unit, drug unit and numerous police officers. However, the event was expected to draw several hundred attendees and adequate security was necessary and required by the county in order to hold the event.
¶ 16 Because the searches were private actions not subject to Fourth Amendment protections, we need not address Speers' argument that he did not consent to be searched by the promoter's security staff.
¶ 17 Speers next attacks the search of his wallet and seeks suppression of all subsequent statements and evidence. The search of Speers' wallet yielded another, second baggie with a small amount of white powder in it. Speers denied knowledge of the contents of the second baggie. An officer then asked Speers what was in the first baggie, and Speers admitted that it was cocaine. At that point, Speers was arrested and given the Miranda warnings. The officers determined that Speers' vehicle was in the parking lot, but Speers declined to give permission to search it. The officers obtained identifying information for Speers' vehicle and located it in the parking lot. A canine unit led officers to the trunk and passenger compartment where more controlled substances and drug paraphernalia were found.
¶ 18 The circuit court found that the second baggie in the wallet would have been inevitably discovered as a result of the discovery of the first baggie of cocaine on Speers' person. The drug evidence in Speers' vehicle also would have been inevitably discovered because his vehicle ultimately would have been searched.
¶ 19 The State concedes on appeal that the search of Speers' wallet violated the Fourth Amendment because officers did not have a warrant, Speers did not consent to the search, and the search did not fall within any other exceptions to the warrant requirement. Nevertheless, the State argues that the evidence and statements need not be suppressed because there was no connection between the illegal wallet search and the subsequent statements and evidence and the evidence is otherwise admissible under the doctrine of inevitable discovery. We agree with the State.
¶ 20 For suppression to be the remedy, there must have been a close causal connection between the illegal wallet search and the subsequently discovered evidence in the vehicle and Speers' admission that the first baggie contained cocaine. See State v. Kraimer, 91 Wis. 2d 418, 433, 283 N.W.2d 438 (Ct. App. 1979). The question is whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 432 (emphasis and citation omitted).
¶ 21 At the time the officers found the second baggie in Speers' wallet, they already had possession of the baggie found on Speers during the security staff's search. In their experience, the officers suspected that the first baggie contained cocaine. The second baggie added nothing to the investigation at the point at which it was found, and Speers' admission that the first baggie contained cocaine was in response to an officer's question about the first baggie.[2] There is an insufficient connection between the illegal wallet search and Speers' admission and the evidence discovered in Speers' automobile.
¶ 22 Moreover, in light of the suspected drugs found on Speers during the security search, the ensuing questioning of Speers and the search of his vehicle would have occurred in any event. The inevitable discovery doctrine provides:
Under this doctrine, evidence obtained during a search which is tainted by some illegal act may be admissible if the tainted evidence would have been inevitably discovered by lawful means. The State must establish: (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the government at the time of the misconduct, and (3) that prior to the unlawful search the government also was actively pursuing some alternate line of investigation.
State v. Lopez, 207 Wis. 2d 413, 427-28, 559 N.W.2d 264 (Ct. App. 1996) (citations omitted).
¶ 23 Speers argues that the inevitable discovery doctrine does not apply because the police did not have probable cause to believe that the substance in the first baggie was cocaine. Speers' argument hinges on his contention that he did not admit the contents of the first baggie until after his wallet was illegally searched. We have already stated that Speers' admission regarding the first baggie occurred in response to a question about the first baggie, not the second baggie. The suppression record indicates that the officers who saw the first baggie all suspected, given their training and experience, that the substance was cocaine. The subsequent questioning of Speers and the search of his vehicle would have occurred in any event. (1) There was a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) the officers had leads which made the discovery inevitable even before the illegal wallet search, and (3) prior to the unlawful search the government also was actively pursuing the alternate line of investigation relating to the first baggie which clearly contained a white, powdery substance which the officers, in their training and experience, suspected was cocaine.[3]
¶ 24 Speers next argues that his initial questioning occurred while he was in custody and without Miranda warnings. During this questioning, Speers admitted that the first baggie contained cocaine. Speers seeks suppression of the cocaine found in the first baggie, his automobile keys and evidence found in his vehicle because the evidence was obtained via an exploitation of his Miranda rights.
¶ 25 We first summarize the Miranda rules.
The prosecution may not use a defendant's statements stemming from custodial interrogation unless the defendant has been given the requisite warnings. In Miranda, the Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." Subsequently, the Court held that the Miranda safeguards attach when a "suspect's freedom of action is curtailed to a `degree associated with [a] formal arrest.'" The relevant inquiry is how a reasonable person in the suspect's situation would understand the situation.
In reviewing the trial court's decision, we accept that court's findings of historical fact unless they are clearly erroneous; however, whether a person is "in custody" for Miranda purposes is a question of law, which we review de novo based on the facts as found by the trial court.
In determining whether an individual is "in custody" for purposes of Miranda warnings, we consider the totality of the circumstances, including such factors as: the defendant's freedom to leave; the purpose, place, and length of the interrogation; and the degree of restraint. When considering the degree of restraint, we consider: whether the suspect is handcuffed, whether a weapon is drawn, whether a frisk is performed, the manner in which the suspect is restrained, whether the suspect is moved to another location, whether questioning took place in a police vehicle, and the number of officers involved.
State v. Morgan, 2002 WI App 124, ¶ ¶ 10-12, 254 Wis. 2d 602, 648 N.W.2d 23 (alterations in original; citations omitted).
¶ 26 Speers argues that he was in custody at the time he was interrogated about the contents of the first baggie and admitted that it contained cocaine. Speers relies on the fact that he was involuntarily escorted to the police command center and placed in a room with other police officers. Speers argues that a reasonable person would believe that his freedom was completely restrained and that he was in custody during questioning. The State argues that the degree of restraint on Speers' freedom did not amount to custody requiring Miranda warnings prior to questioning.
¶ 27 We apply the factors set out in Morgan to determine if Speers was in custody. After the security search turned up the first baggie, the police relocated Speers to an area that had been cordoned off by the police for use as a command center. The officer testified that Speers was taken to this location because the music was too loud and there were too many people around to question Speers at the security check point. The command post was not isolated, people could see in and out of it, and it did not have the atmosphere of a police station. Speers was not handcuffed; no weapons were brandished. The police did not search Speers. Speers did not ask to leave. While the record does not reveal the duration of the questioning, there was no evidence at the suppression hearing that Speers was fatigued or distressed during questioning, and Speers does not contend that the length of the questioning argues in favor of a finding that he was in custody. The purpose of the questioning was to inquire further into the contents of the baggie found on Speers' person. Speers denied any knowledge of the contents of the baggie and field tests had not yet been conducted on the contents of the baggie even though the police suspected the baggie contained cocaine. No more than two officers were involved with Speers. Considering the Morgan factors, the degree of restraint did not constitute being in custody.
¶ 28 Speers was not in custody when he incriminated himself. Therefore, Miranda warnings were not required.
By the Court.  Judgment and order affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436 (1966).
[2] Speers mischaracterizes the suppression hearing record when he contends that he was confronted with the second baggie found in his wallet. An officer testified that the second baggie contained little or nothing. Speers denied any knowledge of the contents of the second baggie. Speers' admission that the first baggie contained cocaine came in response to a question about the contents of the first baggie.
[3] Speers also relies on State v. Knapp, 2003 WI 121, 265 Wis. 2d 278, 666 N.W.2d 881, cert. granted and judgment vacated by Wisconsin v. Knapp, __ U.S. __, 124 S. Ct. 2932 (U.S. Wis. June 30, 2004) (No. 03-590), in support of his argument that evidence obtained in violation of Miranda should be suppressed. However, the United States Supreme Court granted certiorari in Knapp, vacated the decision and remanded the case to the Wisconsin Supreme Court for further consideration in light of a recent United States Supreme Court case. The Wisconsin Supreme Court has not yet issued a new decision in Knapp. Furthermore, because we hold that Speers' Miranda rights were not violated, the threshold standard of Knapp, a Miranda violation, is not met.