SHERMAN, J.[1]
¶1 Christopher P. Bray appeals from a judgment of conviction for operating while intoxicated (OWI), first offense, contrary to WIS. STAT. § 346.63(1)(a). Bray contends that the circuit court erred in denying his motion to suppress evidence, which included statements made by him during a traffic stop on the basis that he was not provided a warning required by Miranda v. Arizona , 384 U.S. 436 (1966) before he made the statements he claims should have been suppressed. The circuit court concluded that Bray was not in custody when Bray made the statements and, therefore, no warning was required under Miranda . I agree and affirm.
BACKGROUND
¶2 The following facts are taken from the Marquette County Sheriff's Department Sergeant Brian Ropicky's squad car video. Sergeant Ropicky stopped Bray's vehicle and upon approaching Bray's vehicle, Sergeant Ropicky advised Bray that he had stopped Bray's vehicle for speeding. Sergeant Ropicky informed Bray that he could smell the odor of alcohol on Bray's breath and asked Bray how much alcohol Bray had consumed that night, to which Bray replied "a couple of beers." Sergeant Ropicky asked Bray some questions about where Bray was from, where Bray had been and where Bray was going. After calling into the police dispatcher to check Bray's license, Sergeant Ropicky had Bray step out of his vehicle to perform field sobriety tests. Before beginning the field sobriety tests, Sergeant Ropicky patted Bray down to check for weapons. While patting Bray down, Sergeant Ropicky continued to talk with Bray about where Bray had come from and where he was going, his speeding, and his drinking that evening. Sergeant Ropicky then performed the Horizontal Gaze Nystagmus test, the walk and turn test, and had Bray raise one leg, recite a section of the alphabet, and count backward from 72 to 59.
¶3 After the completion of the field sobriety tests, Sergeant Ropicky asked Bray more questions about his alcohol consumption that evening, and then had Bray blow into the Preliminary Breath Test (PBT) device. The PBT indicated that Bray had a blood alcohol level of .135. After administering the PBT, Sergeant Ropicky placed Bray in restraints and arrested him for OWI and operating with a prohibited blood alcohol concentration. Sergeant Ropicky then transported Bray to the Marquette County Sheriff's Office. During the drive to the Sheriff's Office, Ropicky read Bray the "Informing the Accused" form, but once Bray was placed into restraints and had been placed under arrest, Sergeant Ropicky did not ask Bray any further questions.
¶4 Prior to trial, Bray moved the circuit court to suppress statements that he made between the time that his vehicle was stopped at the roadside and his arrest. Bray also moved to suppress, under the "fruit of the poisonous tree" doctrine, the PBT result, the video recording of his detention and arrest, the Alcohol Influence Report, and the blood alcohol test result. Following a hearing the circuit court denied Bray's motion to suppress.[2] The case proceeded to trial before the court, and Bray was found guilty of OWI. Bray appeals.
DISCUSSION
¶5 Restated, Bray contends that the circuit court erred in denying his motion to suppress evidence. "Whether evidence should be suppressed is a question of constitutional fact. In reviewing questions of constitutional fact, [appellate courts] uphold a circuit court's factual findings unless clearly erroneous, but [ ] independently determine whether those facts meet the constitutional standard." State v. Knapp , 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899. The facts are undisputed. The parties submitted the motion upon a transcript of the audio of the dash cam video up to the time of arrest and the entire video is in the record on a video disc. Therefore, I am in the same position as the circuit court to review both the transcript and the video, so that what remains is only whether those facts meet the constitutional standard, which I review de novo.
¶6 Bray claims that questioning of him after his vehicle was stopped by Sergeant Ropicky violated his rights under Miranda . Miranda provides that, in order to ensure that law enforcement complies with the Fifth Amendment to the United States Constitution, statements made to law enforcement while a person is in custody cannot be used at trial unless the person is first warned that "he [or she] has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed." Miranda , 384 U.S. at 444. In the present case, the question of whether Bray's motion to suppress should have been granted turns on whether Bray was in custody.
¶7 The United States Supreme Court has held that briefly detaining a person for investigative purposes is a seizure under the Fourth Amendment to the United States Constitution, see Terry v. Ohio , 392 U.S. 1, 19 (1968), but that a defendant is not necessarily "in custody" and entitled to Miranda warnings during such a stop, which is known as a Terry stop. Maryland v. Shatzer , 559 U.S. 98, 113 (2010).
¶8 A defendant who is detained and questioned during a valid Terry stop, may be considered "in custody" for purposes of the Fifth Amendment and entitled to Miranda warnings prior to questioning if " ' "a reasonable person in the defendant's position would have considered himself or herself to be in custody, given the degree of restraint under the [totality of the] circumstances." ' " State v. Gruen , 218 Wis. 2d 581, 593, 582 N.W.2d 728 (Ct. App. 1998) (quoted source omitted.)
¶9 "[T]he totality of the circumstances includes ... the defendant's freedom to leave the scene; the purpose, place and length of the interrogation, and the degree of restraint." Id. at 594. In considering the degree of restraint, courts have considered whether the defendant was handcuffed, whether a gun was drawn on the defendant, whether a Terry stop was performed, the manner in which the defendant was restrained, whether the defendant was moved to another location, whether the questioning took place in a police vehicle, and the number of police officers involved. Id. at 594-96.
¶10 Whether the person is detained pursuant to Terry , while not determinative, is also a relevant consideration. Id. at 596. Clearly, a person "seized" for Fourth Amendment purposes is not completely free to leave the scene, but, as noted above, a defendant detained during a valid Terry stop is not necessarily in custody for Fifth Amendment purposes. A person is only in custody for Fifth Amendment purposes when his or her freedom of action is curtailed to a degree associated with formal arrest. See Berkemer v. McCarty , 468 U.S. 420, 440 (1984).
¶11 Whether a defendant detained during a Terry stop is in custody turns on the facts of the particular case. This is illustrated in State v. Morgan , 2002 WI App 124, ¶1, 254 Wis. 2d 602, 648 N.W.2d 23, wherein this court determined that the defendant was in custody when questioned during a Terry stop and, thus, entitled to Miranda warning, and Gruen , 218 Wis. 2d 581, wherein we reached the opposite conclusion.
¶12 In Morgan , the defendant, Morgan, arrived at his apartment as law enforcement officers were searching the apartment, a search which had already yielded drugs and a gun. Id. , ¶3. Upon seeing the officers, whose guns were drawn, Morgan fled. Id. , ¶¶3-4. An officer caught Morgan while Morgan was attempting to enter the driver's side door of an occupied car. The officer handcuffed Morgan at the rear of the car and frisked Morgan for weapons, and, after finding no weapons on Morgan, set Morgan on the curb behind the car. Id. , ¶4. Morgan was later placed into the rear seat of a squad car while still handcuffed. Id. , ¶5.
¶13 Morgan consented to a search of his vehicle. Id. During the search, officers found a cigar from which the tobacco had been removed and replaced with marijuana, which is referred to as a "blunt." Id. An officer asked Morgan, who "couldn't go anywhere" because he "was [ ] handcuffed and sitting in the back of the squad car, what he knew about the blunt." Id. , ¶6. According to the officer, Morgan said that he had been smoking the blunt before officers arrived at the apartment that night. Id. Prior to that statement, Morgan had not been told that he was under arrest and had not been given Miranda warnings. Id.
¶14 This court concluded on appeal that Morgan was in custody at the time he made statements about the blunt and should have been provided his Mirganda rights prior to those statements. Id. , ¶¶9, 26. In reaching that conclusion, this court focused on the degree of restraint and applied the factors set forth above in ¶9. These included the fact that Morgan was physically removed from his car, was placed in handcuffs, and was placed into the back of a squad car, all without Morgan's consent. Id. , ¶¶17-20. The time between Morgan being removed from his car and his being asked about the blunt was relatively brief; however, all of the other factors militated in favor of the conclusion that Morgan was in custody at the time. Id. , ¶17.
¶15 In Gruen , this court concluded that the defendant, Gruen, was not in custody when questioned and, thus, not entitled to Miranda warnings prior to the challenged statements. Gruen , 218 Wis. 2d at 586. In Gruen , police officer Michael Barbian came upon a car that was stuck in snow in the median of a road, which was outside Officer Barbian's jurisdiction. Id. at 586. The weather was cold, windy and snowing, with a fresh layer of snow on the ground. Id. Officer Barbian saw a man, later identified as Gruen, walking away from the car and observed a single set of footprints leading from the car to the man. Id. Officer Barbian stopped Gruen and informed Gruen that the local police department needed to be contacted. Id. at 587. Officer Barbian asked Gruen if he wanted to sit inside the officer's vehicle to get out of the cold while they waited for local law enforcement. Id. After Gruen indicated that he did, Officer Barbian frisked Gruen for Officer Barbian's safety before placing Gruen inside the vehicle. Id.
¶16 After about ten to fifteen minutes, an officer with the local police department, Officer Brian Betchner, arrived at the scene. Id. Officer Barbian advised Officer Betchner of the information he had already obtained from Gruen and opined to Officer Betchner that Gruen was intoxicated. Id. Officer Betchner asked Gruen what had happened, and Gruen replied that he "slid into a snow bank and that he would pay for the damages." Id. at 588. Officer Betchner then asked, " '[s]o you were driving, then?,' " to which Gruen replied " 'from what [I] remember [ ], [I] wasn't.' " Id. Officer Betchner then asked Gruen, " '[w]ell, then who was driving?,' " and Gruen replied, " '[j]ust let our attorneys settle this.' " Id. Officer Betchner then placed Gruen under arrest. Id. Whether Gruen was in handcuffs at any time was not clear. Officer Barbian testified that he had not placed Gruen in handcuffs, however, Officer Betchner testified that, while he was not certain, he thought Gruen was in handcuffs when he first saw Gruen. Id. at 587.
¶17 Gruen argued on appeal that statements that he made while in Officer Barbian's vehicle should have been suppressed on the ground that he was in custody but was not given the Miranda warning. Id. at 588. However, this court determined that Gruen was not in custody when questioned. As in the Morgan court, this court applied the factors set forth above in ¶9. Id. at 593-94. This court first noted that Gruen was not arrested, but merely detained pursuant to a Terry stop. Id. at 596. This court made clear that, while the type of stop is not determinative, it weighed in favor of Gruen not being in custody. Id. This court also looked to the fact that Gruen had been asked if he wanted to sit in the van in light of the weather conditions. This court observed that "[a] reasonable person is less likely to believe he or she is in custody when he or she is asked, rather than ordered, to do something by a police officer," making it less likely that Gruen was in custody. Id. This court also noted that, while the door to the van was locked while awaiting the arrival of Officer Betchner, it is not clear whether or not Gruen knew that it was locked, and when Officer Betchner arrived, he opened the door and questioned Gruen while standing in the open doorway, so that clearly Gruen was not locked in when questioned. Id. at 597. Finally, this court considered whether Gruen was handcuffed during his interaction with Officer Betchner. This court noted the conflicting testimony of the two officers, and observed that "if Gruen were handcuffed, that fact would strongly support the conclusion that he was in custody for Miranda purposes." Id. at 597. However, this court ultimately concluded that the circuit court had implicitly found that Gruen was not handcuffed.[3] Finally, this court noted that Gruen had not been moved to another location, but had been questioned at the scene and that, although he was frisked for Officer Barbian's safety, he had not been ordered to the ground, no guns were drawn on him; and, although two officers questioned him, they did so at different times. Id. at 598.
¶18 Turning to the present case, considering the facts of this case in light of the reasoning of this court in Morgan and Gruen , I conclude that Bray was not in custody at the time he was questioned. Like the defendant in Gruen , Bray was not handcuffed. In Morgan , the defendant was physically removed from his car and placed into a squad car involuntarily. In Gruen , the defendant was asked if he wished to shelter from the cold weather in the police van, which the defendant consented to do. Here, Bray was not placed into a police vehicle until after he was arrested, and was asked to perform certain tasks in the vicinity of his own vehicle. In addition, it is clear from a review of the dash cam video that both Sergeant Ropicky and Bray were unfailingly polite to one another throughout their encounter. Sergeant Ropicky, at every stage in the process, asked politely for Bray's cooperation and explained why he was asking for Bray to do certain things, and Bray willingly cooperated. As in Gruen , Bray was frisked for safety, but was not ordered to the ground, and no guns were drawn on him. In addition, only one officer was involved with Bray's questioning. Although the encounter did take over 20 minutes, that was more the result of the field sobriety tests than the result of any extension of the encounter for interrogation purposes. Once the preliminary breath test was given, Bray was arrested, placed into restraints, and Bray was not asked any further questions. All of these facts militate in favor of the conclusion that Bray was not in custody when questioned.
¶19 In contending that he was in custody and entitled to Miranda warnings, Bray focuses on two things: (1) the nature of Sergeant Ropicky's questions; and (2) the indicia of intoxication known to Sergeant Ropicky.
¶20 The type of questions asked by law enforcement is not a factor considered in either Morgan or Gruen , and Bray has provided no citation to legal authority that the content of an officer's questions has any relevance whatsoever to the determination of whether a defendant was or was not in custody at the time of the questioning. This court does not consider arguments unsupported by citation to legal authority. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Accordingly, I do not address that argument any further.
¶21 With respect to Bray's assertion that he was in custody because indicia of intoxication had led Sergeant Ropicky to believe that he was intoxicated, those indicia could only have an effect on Bray's perception that he was in custody to the extent that Bray was aware of them. Sergeant Ropicky did tell Bray during their initial conversation at the window of Bray's car that he could smell alcohol on Bray's breath. However, Bray argues that "[n]o reasonable person who has failed to pass field sobriety testing" is going to believe that he or she is free to leave. Nowhere in the video or the transcript of the audio portion of the video does Sergeant Ropicky comment upon whether Bray passed or failed any of the field sobriety tests. Nothing in either indicates that Bray was aware of having failed the field sobriety tests. Without further information, Bray's argument goes nowhere.
¶22 Finally, Bray cites State v. Knapp for the proposition that law enforcement practices that are deliberate attempts to circumvent Miranda are not permitted. To the extent that Bray is arguing that Sergeant Ropicky deliberately acted in a manner to circumvent Miranda , I reject that argument. Bray does not point to anything in the record that indicates that Sergeant Ropicky deliberately tried to circumvent Miranda . Bray also cites this court to Missouri v. Seibert , 542 U.S. 600 (2004), for the Supreme Court's disapproval of a tactic known as "question first, then give the warnings." Again, nothing in the record here supports a conclusion that Sergeant Ropicky was engaging in such a tactic. Bray makes other arguments predicated upon the notion that his interrogation was custodial. Having decided that Bray was not in custody when questioned, there is no need to address such arguments.
CONCLUSION
¶23 For the above reasons, I conclude that under the totality of the circumstances, Bray was not in custody when Sergeant Ropicky questioned him during the roadside detention. Accordingly, I conclude that the circuit court did not err in denying Bray's motion to suppress and, therefore, affirm the judgment of conviction.
By the Court .-Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

For purposes of the suppression hearing, the parties stipulated to use of a transcript of a portion of the audio recording from the dash cam video in lieu of testimony.

" 'When a [circuit] court does not expressly make a finding necessary to support [a] legal conclusion, an appellate court can assume that the [circuit] court made the finding in the way that supports [the circuit court's] decision.' " State v. Gruen , 218 Wis. 2d 581, 597, 582 N.W.2d 728 (Ct. App. 1998) (quoted source omitted.)